PHILIP R. SELLINGER
United States Attorney
PETER VIZCARRONDO
Assistant United States Attorney
401 Market Street, Fourth Floor
Camden, NJ 08101
Tel.: (856) 757-5031
Email: peter.vizcarrondo@usdoj.gov
*Attorneys for Federal Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROLANDO MUNIZ,<br><br>            *Plaintiff,*<br><br>     v.<br><br>UNITED STATES OF AMERICA, *et al.,*<br><br>            *Defendants.* | Hon. NOEL L. HILLMAN, U.S.D.J.<br><br>Civil Action No. 22-cv-0816 (NLH) (MJS) |

## FEDERAL DEFENDANTS' BRIEF IN SUPPORT OF A MOTION
## TO DISMISS THE AMENDED COMPLAINT UNDER RULES 12(b)(1) and 12(b)(6)

On the brief:

Peter G. Vizcarrondo
Assistant United States Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ................................................................... 1

FACTUAL BACKGROUND ........................................................................ 2

PROCEDURAL HISTORY AND FAILURE TO EXHAUST FTCA CLAIM ....... 5

STANDARD OF REVIEW .......................................................................... 6

    I.  Federal Rule of Civil Procedure 12(b)(1) ........................................ 6

    II.  Federal Rule of Civil Procedure 12(b)(6) ....................................... 7

ARGUMENT ............................................................................................ 8

    I.  The Court Should Not Extend Bivens to the New Context Alleged by Plaintiff .......................................................................................... 9

        A.    Plaintiff's Eighth Amendment Claim Presents a New Context 11

        B.    Special Factors Counsel Hesitation in Creating New Constitutional Remedies Here ........................................... 16

    II.  Defendant Lopez de Lasalle is Entitled to Qualified Immunity From Plaintiff's *Bivens* Claim ................................................................ 22

    III.  Statute of Limitations Bars Plaintiff's *Bivens* Claim ..................... 26

    IV.  Plaintiff Failed to Exhaust Administrative Remedies as to FTCA Claim .......................................................................................... 27

CONCLUSION ....................................................................................... 30

## TABLE OF AUTHORITIES

<u>Federal Cases</u>                                                                                Page(s)

*Ali v. Fed. Bureau of Prisons*
    552 U.S. 214 (2009) .......................................................................... 27

*Alsop v. Fed. Bureau of Prisons*
    No. 22-1933, 2022 WL 16734497 (3d Cir. Nov. 7, 2022) .................................. 24, 25

*Argueta v. U.S. Immigr. & Customs Enf't*
    643 F.3d 60 (3d Cir. 2011) .................................................................. 23

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ....................................................................... 7, 22

*Ashcroft v. al-Kidd*
    563 U.S. 731 (2011) .......................................................................... 22

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ....................................................................... 7, 22

*Bivens v. Six Unknown Named Agents*
    403 U.S. 388 (1971) ................................................................... 1, 9, 11

*Bulger v. Hurwitz*
    62 F.4th 127 (4th Cir. 2023) ................................................................ 17

*Carlson v. Green*
    446 U.S. 14 (1980) .................................................................. 2, 5, 9, 14

*Cestonaro v. United States*
    211 F.3d 749 (3d Cir. 2002) .................................................................. 7

*CNA v. United States*
    535 F.3d 132 (3d Cir. 2008) ................................................................. 7

*Constitution Party v. Aichele*
    757 F.3d 347 (3d Cir. 2014) ................................................................. 7

*Corr. Servs. Corp. v. Malesko*
    534 U.S. 61 (2001) ...................................................................... 10, 18

*Cross v. Buschman*
    No. 1:22-CV-98, 2022 WL 6250647 (M.D. Pa. Oct. 7, 2022) .................................. 15

*Davis v. Fed. Bureau of Prisons*
   Case No. 5:21-cv-1475-CAS (SK), 2022 WL 18460704 (C.D. Cal. Dec. 8, 2022) .... 15

*Davis v. Fed. Bureau of Prisons*
   2023 WL 405319 (C.D. Cal. Jan. 24, 2023) ............................................................ 15

*Davis v. Passman*
   442 U.S. 228 (1979) ................................................................................................ 9

*Dinkins v. United States*
   2022 WL 16735362 (C.D. Cal. Aug. 19, 2022) ...................................................... 16

*Dinkins v. United States*
   2022 WL 15525746 (C.D. Cal. Oct. 27, 2022) ........................................................ 16

*District of Columbia v. Wesby*
   138 S. Ct. 577 (2018) ............................................................................................. 22

*Donaldson v. Garland*
   No. 2:21-cv-1178, 2022 WL 10189084 (E.D. Cal. Oct. 17, 2022) ........................... 15

*Donaldson v. Garland*
   No2022 WL 17722326 (E.D. Cal. Dec. 15, 2022) ................................................... 15

*Egbert v. Boule*
   142 S. Ct. 1793 (2022) ................................................. 1, 2, 10, 11, 12, 15, 17, 19, 20

*Estelle v. Gamble*
   429 U.S. 97 (1976) ................................................................................................. 23

*Farmer v. Brennan*
   511 U.S. 825 (1994) ............................................................................................... 24

*Fisher v. Hollingsworth,* No.
   18-16793 (RBK), 2019 WL 2151348 (D.N.J. May 17, 2019) ................................. 26

*Gambino v. Cassano*
   No. 17-0830 (NLH), 2022 WL 4536469 (D.N.J. Sept. 28, 2022) ........................... 30

*GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*
   888 F.3d 29 (3d Cir. 2018) ...................................................................................... 7

*Ginyard v. Del-Prete*
   No. CV 20-1947, 2022 WL 17492412 (W.D. Pa. Sept. 21, 2022) ........................... 24

*Ginyard v. Del-Prete*
   2022 WL 16832676 (W.D. Pa. Nov. 9, 2022) ........................................................ 24

iii

*Ham v. Greer*
  269 Fed. Appx. 149 (3d Cir. 2008) ................................................................. 25

*Harlow v. Fitzgerald*
  457 U.S. 800 (1982) ...................................................................................... 22

*Hernandez v. Mesa*
  137 S. Ct. 2003 (2017) .................................................................................... 9

*Hernandez*
  140 S. Ct. ............................................................................................ 9, 10, 11

*Hodge v. United States Dep't of Justice*
  372 Fed. Appx. 264 (3d Cir.2010) ................................................................. 24

*Ibuado v. Fed. Prison Atwater*
  2023 WL 2312395 (E.D. Cal. Mar. 1, 2023)................................................... 16

*In re Orthopedic Bone Screw Prod. Liab. Litig.*
  264 F.3d 344 (3d Cir. 2001)............................................................................. 7

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*
  678 F.3d 235 (3d Cir. 2012)............................................................................. 6

*In re Univ. Med. Ctr.*
  973 F.2d 1065 (3d Cir. 1992) ......................................................................... 27

*Jaffee v. United States*
  592 F.2d 712 (3d Cir. 1979) ........................................................................... 27

*Jeffries v. Ortiz*
  No. 18-1146 (RBK), 2020 WL 948797 (D.N.J. Feb. 27, 2020)...................... 26

*Mack v. Yost*
  968 F.3d 311 (3d Cir. 2020)................................................................ 10, 12, 17, 20

*Malesko*
  534 U.S.61 (2001) ......................................................................................... 20

*Malley*
  475 U.S. 335 (1986) ...................................................................................... 22

*McGill v. John Does A-Z*
  541 F. App'x 225 (3d Cir. 2013) .................................................................... 25

iv

*McNeil v. United States*
   508 U.S. 106 (1993) ............................................................................. 28, 29

*Melo v. United States*
   505 F.2d 1026 (8th Cir. 1974) ................................................................. 29

*Mitchell v. Forsyth*
   472 U.S. 511 (1985) .................................................................................. 22

*Moore v. Clinton*
   2018 U.S. Dist. LEXIS 147064, at *4 (D.N.J. Aug. 29, 2018) ................................. 7

*Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*
   834 F.2d 326 (3d Cir.1987) ...................................................................... 23

*Morse v. Lower Merion Sch. Dist.*
   132 F.3d 902 (3d Cir. 1997) ...................................................................... 8

*Pearson v. Callahan*
   555 U.S. 223 (2009) .................................................................................. 22

*Peguero v. Meyer*
   520 F. App'x 58 (3d Cir. 2013) ................................................................. 26

*Peguero v. Quay*
   No. 1:22-CV-00057, 2023 WL 2410882 (M.D. Pa. Mar. 8, 2023) ..................... 15, 21

*Prescott v. United States*
   Case No. 2:20-cv-2740-SB (SK), 2022 WL 18859316 (C.D. Cal. Dec. 21, 2022)..... 15

*Prescott v. United States*
   2023 WL 2188692 (C.D. Cal. Feb. 22, 2023) ......................................... 15

*Procunier v. Martinez*
   416 U.S. 396 (1974) .................................................................................. 20

*Reichle v. Howards*
   566 U.S. 658 (2012) .................................................................................. 22

*Roma v. United States*
   344 F.3d 352 (3d Cir. 2003) ...................................................................... 28

*Sameric Corp. v. City of Phila.*
   142 F.3d 582 (3d Cir. 1998) ...................................................................... 26

*Santos v. United States*
   559 F.3d 189 (3d Cir. 2009) ...................................................................... 27

v

*Saucier v. Katz*
533 U.S. 194 ..................................................................................................... 22

*Sconiers v. United States*
896 F.3d 595 (3d. Cir. 2018).............................................................................. 28

*Sharp v. United States Marshals Serv.*
No. 5:20-CT-03282, 2022 WL 3573860 (E.D.N.C. July 15, 2022).......................... 15

*Silva v. United States*
45 F.4th 1134 (10th Cir. 2022)........................................................................... 17

*Spruill v. Gillis*
372 F.3d 218 (3d Cir. 2004)................................................................................ 23

*Szemple v. Univ. of Med. & Dentistry*
No. 11–1376, 2011 WL 5562668 (3d Cir. Nov.16, 2011) ......................................... 23

*Thomas v. Ahmed.,*
2023 WL 2499597 (S.D. Ill. Mar. 14, 2023) ......................................................... 16

*Turner v. Safely*
482 U.S. 78 (1987) ............................................................................................. 21

*U.S. ex rel. Walker v. Fayette Cnty.*
599 F.2d 573 (3d Cir. 1979)................................................................................ 25

*United States v. Mitchell*
445 U.S. 535 (1980) ........................................................................................... 27

*United States v. Sherwood*
312 U.S. 584 (1941) ........................................................................................... 27

*Vasquez v. Batiste*
No. 14-4366 (RBK), 2015 WL 4569706 (D.N.J. July 23, 2015).............................. 26

*Wadhwa v. Nicholson*
367 F. App'x 322 (3d Cir. 2010) ......................................................................... 29

*Wallace v. Kato*
549 U.S. 384 (2007) ........................................................................................... 26

*Washington v. Fed. Bureau of Prisons*
No. 5:16-3913-BHH, 2022 WL 3701577 (D.S.C. Aug. 26, 2022) ............................ 14

*Watanabe v. Derr*
No. CV 22-00168 JAO-RT, 2023 WL 2500933 (D. Haw. Mar. 10, 2023)............... 16

vi

*White v. Napoleon*
    897 F.2d 103 (3d Cir.1990)...................................................................... 23

*White-Squire v. U.S. Postal Serv.*
    592 F.3d 453 (3d Cir. 2010)...................................................................... 28

*Wilkie*
    551 U.S. ........................................................................................................ 16

*Young v. United States*
    No. 18-2338 (CCC), 2019 WL 3451565 (D.N.J. July 31, 2019).............................. 28

*Ziglar v. Abbasi*
    137 S. Ct. 1843 (2017) ........................................................................ passim

<u>Federal Statutes</u>

5 U.S.C. App. 3 § 5(a)(1) ......................................................................... 19

5 U.S.C. App. 3 § 8E(d) ............................................................................ 18

28 U.S.C. § 2401(b) .................................................................................. 28

28 U.S.C. § 2675(a) .................................................................................. 28

28 U.S.C. §§ 1346(b) ................................................................................ 27

28 U.S.C. §§ 2679-80 ............................................................................... 27

29 U.S.C. § 794(a) .................................................................................. 5, 6

<u>Federal Rules</u>

Fed. R Civ. P 8 ........................................................................................ 22

Fed. R Civ. P 12(b)(1)................................................................................ 6

Fed. R Civ. P 12(b)(6)............................................................................. 7, 8

<u>Federal Regulations</u>

28 C.F.R. § 14.2 ..................................................................................... 6, 29

28 C.F.R. § 543.31(c) .............................................................................. 6, 29

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Rolando Muniz, a federal inmate formerly incarcerated at the Federal Correctional Institution ("FCI") in Fairton, New Jersey, brings a constitutional claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) against Dr. Abigail Lopez de Lasalle, his medical provider at FCI Fairton, and a claim under the Federal Tort Claims Act ("FTCA") against the United States alleging medical negligence. Plaintiff, a diabetic, contends that Dr. Lopez de Lasalle violated the Eighth Amendment's prohibition on cruel and unusual punishment when she discontinued his diabetes medication after his blood insulin fell below diabetic levels. Plaintiff alleges that, approximately four months later, he developed a diabetic ulcer that led to the amputation of one of his toes. For the reasons set forth below, this Court should dismiss Plaintiff's claims against the Dr. Lopez de Lasalle and the United States.

First, allowing Plaintiff's claim against Dr. Lopez de Lasalle to proceed would impermissibly extend the *Bivens* remedy into a new context and open the door to the type of implied, judge-made damages remedies that the Supreme Court has strongly and repeatedly cautioned against. In *Egbert v. Boule*, the Supreme Court emphasized that the Constitution's separation of powers requires courts confronted with *Bivens* claims to ask whether "there is any reason to think that Congress might be better equipped to create a damages remedy" than the courts. 142 S. Ct. 1793, 1803 (2022). "If there is a rational reason to think that the answer is 'Congress'—*as it will be in most every case*, no *Bivens* action may lie." *Id.* (emphasis added). Although the Supreme Court previously recognized a *Bivens* claim for

1

deliberate indifference to a medical need in *Carlson v. Green*, 446 U.S. 14 (1980), "a plaintiff cannot justify a *Bivens* extension simply based on 'parallel circumstances' with *Carlson*" alone. *Egbert*, 142 S.Ct. at 1809 (citations omitted). Here, the nature and severity of Plaintiff's injuries are vastly different from *Carlson*, which involved failure to provide life-saving medical treatment to an inmate suffering an acute asthma attack. Moreover, as there are multiple other avenues for Plaintiff to redress his claims, numerous "special factors" counsel hesitation before extending a *Bivens* cause of action into this new realm.

Furthermore, Plaintiff's *Bivens* claim against Dr. Lopez de Lasalle is untimely, as it accrued at the very latest on November 23, 2019—the date of his toe amputation—yet he filed the present Complaint on February 15, 2022, well outside the applicable two-year statute of limitations. Moreover, Dr. Lopez de Lasalle is entitled to qualified immunity from Plaintiff's *Bivens* claim because his allegations amount to a disagreement in a course of treatment, which is not deliberate indifference to a serious medical need. Finally, the Court lacks jurisdiction over Plaintiffs' tort claim under the FTCA because Plaintiff failed to comply with the FTCA's jurisdictional exhaustion requirement, as he filed suit only a month after he submitted his administrative tort claim to the BOP instead of giving BOP six months to adjudicate his claim.

Thus, the Court should dismiss Plaintiff's Complaint in its entirety.

## FACTUAL BACKGROUND

Plaintiff alleges that he was first diagnosed as diabetic while incarcerated in in San Antonio, Texas GEO in 2011. Compl. at 12, ECF No. 1; Compl., Ex. 5

(Affidavit of Rolando Muniz ("Muniz Aff.")) ¶ 2, ECF No. 1-2. By 2014, he was fully diabetic and on a diabetes medication, Metaformin. *Id.* At some point thereafter, Plaintiff was transferred to FCI Marianna, where a medical provider, Dr. Gardner, managed Plaintiff's diabetes while varying his Metaformin dosage from 500 to 1000 grams based on fluctuations in his A1C levels. Compl. at 12; Muniz Aff. at ¶ 3.[1] Dr. Gardner also authorized Plaintiff's use of soft shoes to treat diabetic ulcers on his feet and approved him for a bottom bunk pass. *Id.*

In March of 2018, while still incarcerated, Plaintiff "dropped out of the gang life and signed a drop out package." Muniz Aff.  ¶ 5. On September 18, 2018, "as part of the [the] debriefing procedure," he was placed in the Special Housing Unit ("SHU"). *Id.*; Compl. at 13.  BOP transferred Plaintiff to FCI Yazoo "a few months later," where he remained in the SHU. Compl. at p. 13. Plaintiff alleges that he was in the SHU for a total of ten months and "practically starved," which caused his A1C levels to fall to 6.1. *Id.* Medical records that Plaintiff attaches to his Complaint indicate that this reading was from May 22, 2019. Compl., Ex. 1 at 41, ECF No. 1-2. Because of this drop in his A1C levels, a medical provider at FCI Yazoo, Dr.

---

[1] "The A1C test—also known as the hemoglobin A1C or HbA1c test—is a simple blood test that measures your average blood sugar levels over the past 3 months. It's one of the commonly used tests to diagnose prediabetes and diabetes . . . ."  All About Your A1C, https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html#:~:text=Diagnosing%20Prediabetes%20or%20Diabetes&text=A%20normal%20A1C%20level%20is,6.5%25%20or%20more%20indicates%20diabetes. (last visited Mar. 23, 2023).  "A normal A1C level is below 5.7%, a level of 5.7% to 6.4% indicates prediabetes, and a level of 6.5% or more indicates diabetes. Within the 5.7% to 6.4% prediabetes range, the higher your A1C, the greater your risk is for developing type 2 diabetes."  *Id.*

Alexander, reduced Plaintiff's Metafromin dosage to 500 grams a day in June of 2019. Compl. at 14.

The next month, July of 2019, BOP transferred Plaintiff to FCI Fairton and housed him in the general population. Compl. at 14; Muniz Aff. ¶ 7. On July 10, 2019, Plaintiff saw his new medical provider at FCI Fairton, Defendant Lopez de Lasalle. *Id.* Plaintiff alleges that after reviewing the recent blood test results from FCI Yazoo showing Plaintiff's A1C level to be 6.1, Dr. Lopez de Lasalle decided to take him off his diabetes medication due to the A1C reading. Compl. at 14; Muniz Aff. ¶ 7. Plaintiff alleges that he explained to Dr. Lopez de Lasalle that he had been "starving" in the SHU when this A1C reading was taken, and that the reading would be higher now that he had moved to the general population. Compl. at 14; Muniz Aff. ¶ 7. Plaintiff alleges that he asked Dr. Lopez de Lasalle not to discontinue his Metformin until he received new blood test results, but Dr. Lopez de Lasalle responded that he did not need the medication, so "there was no point for BOP to spend money for something Plaintiff did not need." Compl. at 14; Muniz Aff. ¶ 8. Dr. Lopez de Lasalle also did not renew Plaintiff's soft shoe pass or bottom bunk pass. *Id.* Medical records that Plaintiff attaches to the Complaint indicate that Dr. Lopez de Lasalle did in fact order a panel of diabetes-related laboratory requests. Compl., Ex. 1 at 41, ECF No. 1-2.

Plaintiff alleges that by November of 2019 his diabetes had "skyrocketed" and his "diabetic blisters on feet were full of puss and were painful." Compl. at 15. On November 7, 2019, BOP medical staff evaluated Plaintiff's feet and performed a

culture and prescribed daily wound care. *Id.* Plaintiff alleges that his wound worsened and by November 16, 2019, he was in extreme agony. On November 18, 2019, Plaintiff saw Dr. Magan at FCI Fairton, who examined Plaintiff's foot and ordered that he be taken to emergency room immediately. *Id.* 15-16.

Plaintiff was taken to Inspira County Hospital where he saw Dr. Patel and Dr. Watson. *Id.* at 16. Dr. Patel and Dr. Watson placed Plaintiff on antibiotics and ordered an MRI, which revealed that Plaintiff's diabetic ulcers and infection had spread to the bone and that his toe had to be amputated. *Id.* On Wednesday, November 22, 2018, Plaintiff underwent the toe amputation procedure, and he returned to FCI Fairton on Friday, November 23. *Id.*

## PROCEDURAL HISTORY AND FAILURE TO EXHAUST FTCA CLAIM

Plaintiff filed the instant litigation in the United States District Court for the District of New Jersey on February 15, 2022 asserting the following causes of action: a *Bivens* claim against Dr. Lopez de Lasalle, the United States, and the BOP for being deliberately indifferent for his need for diabetic care; a medical negligence claim under the FTCA against Dr. Lopez de Lasalle, the United States, and the BOP; and a claim under the Rehabilitation Act, 29 U.S.C. § 794(a), alleging that he was denied medical care for disabilities. *See* Compl. at 17-20. As relief, he sought $10,000,000 in damages. *Id.* at 20. On May 12, 2022, the Court *sua sponte* screened Plaintiff's complaint pursuant to 28 U.S.C.§ 1915(e)(2)(B) and dismissed Plaintiff's *Bivens* claim against the United States and the BOP, his FTCA claim against Dr. Lopez de Lasalle and the BOP, and the entirety of his Rehabilitation Act claim. Order Proceeding Complaint and Appointing Counsel, ECF No. 4. The Court

5

allowed two of Plaintiff's claims to proceed: his *Bivens* claim against Dr. Lopez de Lasalle and his FTCA claim against the United States. *Id.* The Court also appointed counsel for Plaintiff. *Id.*

With respect to the FTCA's mandatory exhaustion requirement, Plaintiff first submitted an administrative tort claim (called an "SF-95) on October, 12, 2021, seeking $ 1 million as compensation for his amputation on November 23, 2019. *See* Declaration of Jonathan Kerr ("Kerr Decl."), Attach. 1. However, he improperly mailed the claim to the BOP Central Office in Washington, D.C. instead of the BOP Northeast Regional Office, as mandated by 28 C.F.R. § 543.31(c), and failed to sign the SF-95, as required 28 C.F.R. § 14.2. *Id.* On November 22, 2021, after the BOP Central Office forwarded the claim to the Northeast Regional Office, the regional office rejected the filing because of Plaintiff's failure to sign the SF-95. *See id.*, Attach. 2. On December 28, 2021, Plaintiff resubmitted his administrative tort claim to the BOP Northeast Regional Office, and on January 14, 2022, the region sent Plaintiff and acknowledgment indicating they had 6 months from the date of receipt to review, consider, and adjudicate the claim.  *Id.*, Attach. A and B. Plaintiff disregarded this advisement, and, on February 15, 2022, prematurely filed his FTCA complaint before receiving any denial from the BOP. *See* Compl.

## STANDARD OF REVIEW

### I.     Federal Rule of Civil Procedure 12(b)(1)

A court must dismiss a case under Rule 12(b)(1) when it lacks subject matter jurisdiction over the matter. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). The plaintiff bears the

burden of establishing subject matter jurisdiction. *See In re Orthopedic Bone Screw Prod. Liab. Litig.,* 264 F.3d 344, 361 (3d Cir. 2001). A court may consider either a facial or factual attack on jurisdiction. In a facial attack, the court considers a claim on its face to determine whether the alleged facts are sufficient to establish subject matter jurisdiction. *Constitution Party v. Aichele*, 757 F.3d 347, 358-359 (3d Cir. 2014). In a factual attack, the court looks to whether the facts of the case support jurisdiction. *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018). In considering a factual challenge, a court "can look beyond the pleadings to decide factual matters related to jurisdiction." *Moore v. Clinton*, Civil Action No. 18-11411, 2018 U.S. Dist. LEXIS 147064, at *4 (D.N.J. Aug. 29, 2018) (quoting *Cestonaro v. United States*, 211 F.3d 749, 752 (3d Cir. 2002)). During a factual challenge, the plaintiff's allegations do not benefit from a "presumption of truthfulness." *Id.* (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)).

## II.      Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's claims are "plausible" if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must present factual allegations that are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a court must accept

as true the allegations in the complaint, and all reasonable inferences that can be drawn from them, and view them in the light most favorable to the plaintiff for purposes of a Rule 12(b)(6) motion, it "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

## **ARGUMENT**

This Court should dismiss the Complaint in its entirety for the following reasons. First, this Court should decline to extend a *Bivens* remedy to Plaintiff's Eighth Amendment non-emergent medical claim, because it presents a new context and numerous special factors caution hesitation from this Court recognizing a personal damages remedy. Second, Dr. Lopez de Lasalle is entitled to qualified immunity as to Plaintiff's *Bivens* claim because his allegations do not amount to deliberate indifference to a serious medical need. Third, Plaintiff's *Bivens* claim against Dr. Lopez de Lasalle is untimely, as it accrued at the very latest on November 22, 2019, the date of his toe amputation, yet he filed the present Complaint on February 15, 2022, well outside the applicable two-year statute of limitations. Finally, Plaintiff has not complied with the FTCA's mandatory exhaustion requirement, as he filed suit only a month after he had submitted his notice of administrative tort claim to the BOP instead of either waiting for a denial or for six months to elapse, as he was required to do.

I.    **The Court Should Not Extend Bivens to the New Context Alleged by Plaintiff**

    Plaintiff's allegations present a new *Bivens* context, and the Court should not extend a *Bivens* remedy to Plaintiff.[2] In *Bivens*, for the first time, the Supreme Court implied a federal cause of action directly under the Constitution for allegations that federal agents entered a home without a warrant, "manacled" the plaintiff in front of his wife and children, threatened to arrest the whole family, and searched the home "from stem to stern." 403 U.S. at 390; *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1852 (2017).

    Following its decision in *Bivens*, the Supreme Court extended the implied constitutional damages remedy on only two other occasions. First, in *Davis v. Passman*, 442 U.S. 228 (1979), the Court implied a damages remedy for an alleged Fifth Amendment equal protection claim brought against a congressman for firing his female secretary, based on her gender. Then, in *Carlson v. Green*, 446 U.S. 14 (1980), the Court did the same as to an Eighth Amendment deliberate indifference claim for failure to administer emergency medical care to a vulnerable inmate with a documented medical condition, resulting in the inmate's death. Since then, however, the Supreme Court has not recognized any new *Bivens* remedy and, within that same timespan, "consistently rebuffed requests to" do so. *Hernandez*, 140 S. Ct. at 743.

---

[2] The existence of a judge-made *Bivens* remedy is "antecedent to the other questions presented" in a civil rights action. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017). Accordingly, this Court should first address the question of whether Plaintiff's proposed *Bivens* remedy can proceed here before considering the merits of any substantive claims.

Even before *Egbert*, the Supreme Court has emphasized that *Bivens*, *Davis*, and *Carlson* "represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. Those three cases, moreover, were decided in an "*ancien regime*" in which courts implied statutory remedies not contained within the statutes themselves to "make effective a statute's purpose." *Id.* at 1855. Those days have long since passed. *Id. See also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (describing "the heady days in which this Court assumed common-law powers to create causes of action") (Scalia, J., concurring).

Indeed, the Supreme Court has even "gone so far as to observe that if [these] three *Bivens* cases had been decided today, it is doubtful [the Court] would have reached the same result." *Hernandez*, 140 S. Ct. at 742-43 (quotation and alterations omitted). Under the Supreme Court's current framework, expanding *Bivens* to *any* new context or category of defendants "is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857. As the Supreme Court recently made plain, "the Constitution's separation of powers requires" courts "to exercise caution before extending *Bivens*" to any new context. *Hernandez*, 140 S. Ct. at 739.

Federal courts exercising this caution apply a "restrictive two-step framework" the Supreme Court requires "courts to follow when analyzing *Bivens* claims": whether a claim constitutes a "new context" and, if so, whether any special factors counsel hesitation against implying a judge-made damages remedy in the absence of congressional action. *Mack v. Yost*, 968 F.3d 311, 317 (3d Cir. 2020).

10

If the case presents a new context, then a federal court considers whether any special factors counsel hesitation against implying a judge-made damages remedy in the absence of congressional action. *Id*. at 1857-58; *see also Bivens*, 403 U.S. at 396 ("The present case involves no special factors counselling hesitation in the absence of affirmative action by Congress."). A "special factor counseling hesitation" is merely a "reason to pause before applying *Bivens* in a new context or to a new class of defendants" and, if present, the court should "reject the request." *Hernandez*, 140 S. Ct. at 743. This part of the inquiry examines whether there is "any alternative, existing process for protecting the injured party's interest," as well as if any other "special factors counsel[] hesitation in the absence of affirmative action by congress." *Abbasi*, 137 S. Ct. at 1857-58 (quotation marks and brackets omitted).

To the extent there was any doubt as to the high burden imposed by the two-part test described in *Abbasi*, the Supreme Court explained in *Egbert* that "those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 2022 WL 2056291, at *6. As the Court made clear, "[i]f there is a rational reason to think that the answer is 'Congress'—as it will be in most every case, no *Bivens* action may lie." *Id*. at *5 (also explaining that "[e]ven a single sound reason to defer to Congress" is enough to require a court to refrain from creating such a remedy") (internal citations omitted).

A. <u>**Plaintiff's Eighth Amendment Claim Presents a New Context**</u>

Plaintiff seeks a new judge-made *Bivens* remedy for Dr. Lopez De Lasalle's decision to discontinue Plaintiff's diabetes medication after a drop in his blood insulin levels, leading to the amputation of his to three months later. This claim is "meaningfully different" from the circumstances in *Carlson* and presents a "new context" under Supreme Court precedent.

The *Abbasi* framework first asks if the case constitutes a "new context": that is, whether it is "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court (*Bivens*, *Davis*, or *Carlson*). *Abbasi*, 137 S. Ct. at 1859-60. The Supreme Court has "defined 'new context' broadly, indicating that 'a modest extension is still an extension.'" *Mack*, 968 F.3d at 317 (quoting *Abbasi*, 137 S. Ct. at 1864). And even differences that "are perhaps small, at least in practical terms," are sufficient to present a "new context," given the Supreme Court's "expressed caution about extending the *Bivens* remedy." *Abbasi*, 137 S. Ct. at 1865. Even claims involving the same constitutional rights at issue in *Bivens* or its progeny can be "meaningfully different" under *Abbasi* because of, *inter alia*, " the mechanism of injury," "the rank of the officers involved," "the generality or specificity of the official action," "legal mandate under which the officer was operating," or "the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Abbasi*, 137 S. Ct. at 1860; *see also id.* at 1864 ("[E]ven a modest extension is still an extension" of the *Bivens* remedy.).

*Egbert* signals a significant shift in how courts should approach the new context inquiry. *Egbert* affirmed that the plaintiff's Fourth Amendment claim arose

in a new context despite its very close factual and legal similarities to *Bivens*. *See*
142 S. Ct. at 1810 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set
of facts differs meaningfully from those in *Bivens* itself."); *id.* at 1815 (Sotomayor,
J., concurring in the judgment in part and dissenting in part) ("At bottom, [the
respondent's] claim is materially indistinguishable from the claim brought in
*Bivens*."). In doing so, the majority observed that "a plaintiff cannot justify a *Bivens*
extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* unless
he also satisfies the 'analytic framework' prescribed by the last four decades of
intervening case law." *Id.* at 1809. In other words, a court should conduct a special
factors analysis even when the plaintiff's allegations closely resemble *Carlson*
because that case "predates [the Court's] current approach to implied causes of
action." *Id.*

Following *Egbert,* it is clear that Plaintiff's allegations are "meaningfully
different" under the review that the Supreme Court has dictated. Although *Carlson*
involved an Eighth Amendment claim, its allegations, which centered on an alleged
deliberate indifference to plaintiff's acute asthma attack which resulted in the
inmate's death, do not resemble the claims in this case.  As the Court in *Carlson*
described the plaintiff's allegations,

> [P]etitioners, being fully apprised of the gross inadequacy of medical
> facilities and staff at the Federal Correction Center in Terre Haute, Ind.,
> and of the seriousness of Jones' chronic asthmatic condition, nonetheless
> kept him in that facility against the advice of doctors, failed to give him
> competent medical attention for some eight hours after he had an
> asthmatic attack, administered contra-indicated drugs which made his
> attack more severe, attempted to use a respirator known to be
> inoperative which further impeded his breathing, and delayed for too

> long a time his transfer to an outside hospital. The complaint further
> alleges that Jones' death resulted from these acts and omissions, that
> petitioners were deliberately indifferent to Jones' serious medical needs,
> and that their indifference was in part attributable to racial prejudice.

*Carlson*, 446 U.S. 14, 17 n.1 (1980).

In contrast to *Carlson*, Plaintiff here alleges that Dr. Lopez de Lasalle

discontinued his diabetes medication, soft shoes, and low bunk pass, and,

approximately four months later, he developed a diabetic ulcer that led to the

amputation of his toe. These facts do not resemble *Carlson* at all, both because they

do not involve allegations of extreme deliberate indifference to an acute medical

emergency and because of the ultimate severity of the injuries involved. Unlike in

*Carlson*, Plaintiff's *Bivens* claims focus on a long term and ongoing course of

medical treatment of Plaintiff's chronic condition, and his ultimate injury was the

amputation of a toe, rather than death. "Whereas the Court in *Carlson* fashioned a

*Bivens*-type remedy to make right a grave constitutional wrong," Plaintiff's *Bivens*

claims here "risk transforming this Court into an *ad hoc* medical review board

tasked with deciding, with little to no judicial guidance, which medical errors, if

any, cross the threshold into constitutional injury." *Washington v. Fed. Bureau of

Prisons*, No. 5:16-3913-BHH, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022)

(declining to extend *Carlson* to new context where plaintiff alleged that defendants

failed "to provide medically necessary treatment, surgery, consultations, physical

and occupational therapy, tools, assistance, and education necessitated" by his legal

blindness, which led to a worsening of his condition). Any broad similarities to

*Carlson* are thus not sufficient on their own to allow a claim to proceed past the

14

strict framework recently imposed by the Supreme Court to evaluate whether a plaintiff has an implied remedy for an Eighth Amendment claim for deliberate indifference.

Since *Egbert*, many courts around the country, including in this Circuit, have declined to permit a *Bivens* remedy where, as here, the allegations do not match the nature or severity of the injuries involved in *Carlson. See*, e.g., *Peguero v. Quay*, No. 1:22-CV-00057, 2023 WL 2410882, at *11 (M.D. Pa. Mar. 8, 2023) (concluding that chronic pain caused by two herniated discs, scoliosis, and nerve damage was a new context because it did not involve a "medical life-threatening emergency"); *Prescott v. United States*, Case No. 2:20-cv-2740-SB (SK), 2022 WL 18859316, at *2 (C.D. Cal. Dec. 21, 2022) (concluding that assigning a federal prisoner to an inhospitable bed and refusing to move him even after a doctor's order presented a new context), *R & R adopted*, 2023 WL 2188692 (C.D. Cal. Feb. 22, 2023); *Davis v. Fed. Bureau of Prisons*, Case No. 5:21-cv-1475-CAS (SK), 2022 WL 18460704, at *2 (C.D. Cal. Dec. 8, 2022), *R & R adopted*, 2023 WL 405319 (C.D. Cal. Jan. 24, 2023) (concluding that federal prisoner's claim that defendant performed an unauthorized surgical procedure presented a new context); *Donaldson v. Garland*, No. 2:21-cv-1178, 2022 WL 10189084, at *3 (E.D. Cal. Oct. 17, 2022) (finding new context where plaintiff alleged that prison officials interfered with medical care by cancelling surgery), *R & R adopted*, 2022 WL 17722326 (E.D. Cal. Dec. 15, 2022); *Cross v. Buschman*, No. 1:22-CV-98, 2022 WL 6250647, at *3 (M.D. Pa. Oct. 7, 2022), *appeal docketed*, No. 22-3194 (3d Cir. Nov. 21, 2022) ("The case is thus notably different from *Carlson*

and presents a new context for *Bivens*"); *Sharp v. United States Marshals Serv.*, No. 5:20-CT-03282, 2022 WL 3573860, at *7 (E.D.N.C. July 15, 2022) (finding that a *Bivens* remedy was not available when the plaintiff's "alleged injuries—dental pain, infected and bleeding gums, and a tooth breaking into pieces—are vastly different from those in *Carlson*").[3]

Plaintiff's claim against Dr. Lopez de Lasalle therefore seeks to extend the *Bivens* remedy into a new context, which requires a review of special factors. *Abbasi*, 137 S. Ct. at 1857.  As set for the below, these special factors are fatal to Plaintiff's claims.

**B.** **Special Factors Counsel Hesitation in Creating New Constitutional Remedies Here**

A special factor fatal to Plaintiff's claims is the presence of "alternative, existing process[es]" to "protect[] the interest" at issue. *Wilkie v. Robbins*, 551 U.S.

---

[3] Respondent recognizes that even since *Egbert* some courts, relying on *Carlson*, have declined to find that certain deliberate indifference to medical needs claim arise in a new *Bivens* context. *See Thomas v. Ahmed.*, No. 21-CV-00192, 2023 WL 2499597, at *5 (S.D. Ill. Mar. 14, 2023); *Ibuado v. Fed. Prison Atwater*, 2023 WL 2312395, at *4 (E.D. Cal. Mar. 1, 2023); *Dinkins v. United States*, 2022 WL 16735362, at *6 (C.D. Cal. Aug. 19, 2022), *report and recommendation adopted*, 2022 WL 15525746 (C.D. Cal. Oct. 27, 2022). However, as one district court has written in denying an inmate's Eighth Amendment medical care claim, none of these decisions "addresses the Supreme Court's statement that 'similar allegations,' 'almost parallel circumstances,' or a 'similar mechanism of injury' are only 'superficial similarities,' and they are 'not enough to support the judicial creation of a cause of action.'" *Watanabe v. Derr*, No. CV 22-00168 JAO-RT, 2023 WL 2500933, at *6 (D. Haw. Mar. 10, 2023) (quoting *Egbert*, 142 S. Ct. at 1805). Further, these decisions do not "address the Supreme Court's warning that 'a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances with . . . *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law.'" *Id.* (quoting *Egbert*, 142 S. Ct. at 1805).

537, 550 (2007). As the Supreme Court made clear in *Egbert*, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 142 S.Ct. at 1804 (quoting *Abbasi*, 137 S. Ct. at 1858). Such alternatives "need not provide an individual with *complete* relief in order to foreclose a damages remedy under *Bivens*." *Mack*, 968 F.3d at 320. Instead, "the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Egbert*, 142 S.Ct. at 1805 (internal citations and quotation marks omitted)

The BOP's administrative remedy process, in and of itself, forecloses *Bivens* relief. Referencing with approval the BOP's administrative remedy program, the Court in *Egbert* concluded that the U.S. Border Patrol's similar administrative process foreclosed judicial creation of a damages remedy, despite that case's similarity with *Bivens*. *Egbert*, 142 S. Ct. at 1806-07. The Court rejected the argument that this process was inadequate, stating that "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807. *See also Bulger v. Hurwitz*, 62 F.4th 127 (4th Cir. 2023) (finding that BOP's administrative remedy is a sufficient "alternative remedial structure" in special factors analysis); *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (same).

That congressionally created program provides a mechanism "through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring," and is capable of addressing a large swath of Plaintiff's grievances. *Malesko*, 534 U.S. at 74. Indeed, Plaintiff claims he took full advantage of this scheme in this matter. Compl. at p.`12.

Additional alternative remedies also exist that create a significant deterrent effect, such as DOJ Office of Inspector General oversight. Congress has already provided a process to address allegations of misconduct by DOJ employees and thereby deter such misconduct. Through the Inspector General Act of 1978, as amended, Congress instructed the Attorney General to ensure that "any component" of the Department that receives a "nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice . . . shall report that information to the Inspector General." 5 U.S.C. App. 3 § 8E(d). Congress in turn authorized the Department's Inspector General as appropriate to "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice," "refer such allegations to the Office of Professional Responsibility," or refer them to "the internal affairs office of the appropriate component" of the Department. *Id.* § 8E(b)(2).

In legislating, Congress placed no limitations on who may report allegations of wrongdoing. *See generally id.* Accordingly, any person, including the plaintiff, may report such alleged misconduct. Indeed, the Department's Office of the Inspector General (OIG) provides a link on its public website to report allegations of

wrongdoing. *See oig.justice.gov/hotline*. Upon receiving such allegations, OIG

generally either opens its own investigation or, as appropriate, refers the

allegations to the Office of Professional Responsibility or the internal affairs office of

the relevant Department component. Any findings by OIG regarding allegations of

misconduct are then provided to the appropriate component for any remedial or

disciplinary steps.

Additionally, the Inspector General Act requires that Inspectors General—

including that of the Department of Justice—prepare semiannual reports that are

transmitted to Congress and that describe "significant problems, abuses, and

deficiencies" related to the administration of the Department's "programs and

operations." 5 U.S.C. App. 3 § 5(a)(1); *id.* § 5(b). The Act also requires that those

reports contain "matters referred to prosecutive authorities and the prosecutions

and convictions which have resulted." *Id.* § 5(a)(4). Through such provisions,

Congress has already taken steps to be notified regarding substantiated misconduct

at the Department, enabling it to conduct its own inquiries should it so choose, and

to enact any laws or provide any remedies it deems fit to address misconduct by

Department employees.

The existence of a congressionally authorized investigatory process, as

implemented by the Executive Branch, is yet another alternative counseling against

this Court implying a damages remedy. *See Egbert*, 142 S. Ct. at 1807 (holding that

if "Congress or the Executive has created a remedial process that it finds sufficient

to secure an adequate level of deterrence, the courts cannot second-guess that

calibration by superimposing a *Bivens* remedy"); *see also Abbasi*, 137 S. Ct. at 1862 (acknowledging that DOJ OIG investigation into the area at issue counseled against *Bivens* remedy).

In sum, various mechanisms exist that provide means to vindicate the interests allegedly at stake. Whether Plaintiff could ultimately succeed on his claims through any of these channels is irrelevant to the special factors inquiry, which looks to whether a plaintiff has *access* to alternatives, not whether those alternatives may or may not prove meritorious. *See Mack*, 968 F.3d at 320 n.8. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S.Ct at 1807. *See also Malesko*, 534 U.S. at 520 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

Separation of powers is another special factor this Court must consider, which the Supreme Court deems "central" to any *Bivens* analysis. *Abbasi*, 137 S. Ct. at 1848; *see also Egbert*, 142 S. Ct. at 1803 (the central question is "whether there is any reason to think that Congress might be better equipped to create a damages remedy"). This case implicates the field of prison administration and, therefore, relates to a matter that is "rarely [the] proper subject[] for judicial intervention." *Egbert*, 142 S. Ct. at 1805. The Supreme Court has long recognized that "federal courts have adopted a broad hands-off attitude toward problems of prison

20

administration," *Procunier v. Martinez*, 416 U.S. 396, 404 (1974), because "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government," *Turner v. Safely*, 482 U.S. 78, 84–85 (1987). Similarly, it is critical that Congress has declined to fashion causes of action against government officials for inmates alleging constitutional violations.

In a recent *Bivens* alleging deliberate indifference to medical care in the Middle District of Pennsylvania, the court found that "the Judiciary is not undoubtedly better positioned than Congress to authorize a damages action in the context of chronic medical care in federal prisons." *Peguero v. Quay*, No. 1:22-CV-00057, 2023 WL 2410882, at *11 (M.D. Pa. Mar. 8, 2023) (internal citations omitted). The court continued, "[t]he provision of chronic medical care is a specialized activity requiring a high degree of training and qualification. In the prison context, the provision of such care is made all the more multifaceted because it must coincide with the security demands and inherent limitations of the custody setting." *Id.* The same is true here.

The multiple considerations here, taken together, provide more than enough reason to give pause before extending *Bivens* to this new context. The Court, therefore, should not imply a *Bivens* remedy in this case and should instead dismiss the claim against Dr. Lopez de Lasalle.

## II.     Defendant Lopez de Lasalle is Entitled to Qualified Immunity From Plaintiff's *Bivens* Claim

This Court should also dismiss Plaintiff's *Bivens* claims pursuant to Rule 12(b)(6) because he fails to plausibly allege facts sufficient to overcome Dr. Lopez de Lasalle's qualified immunity.  Qualified immunity is "'an immunity from suit rather than a mere defense to liability.'" *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  It "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The defense gives officials "breathing room to make reasonable but mistaken judgments about open legal questions," and shields "'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011) (quoting *Malley*, 475 U.S. 335, 341 (1986)). Qualified immunity protects government officials "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

In order to pass the first bar of the qualified immunity analysis, Plaintiff must comply with the pleading requirement of Federal Rule of Civil Procedure 8, which require that a pleading "contain a short and plain statement of the claim showing that the pleader is entitled to relief." In order to meet this standard, a complaint must contain "sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). *Iqbal*'s "'plausibility' standard does not require probability, but it does demand more than a sheer possibility that the defendant acted unlawfully." *Argueta v. U.S. Immigr. & Customs Enf't*, 643 F.3d 60, 72 (3d Cir. 2011).

Where the claim is one alleging the failure to provide medical care, as alleged by Plaintiff here, the core inquiry is whether the defendants' actions constituted "deliberate indifference" to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is shown if a defendant "intentionally den[ies] or delay[s] access to medical care or intentionally interfere[es] with the treatment once prescribed." *Id.* at 104–05. Furthermore, deliberate indifference can be manifested by "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir.1990). Moreover, "[s]hort of absolute denial, if necessary medical treatment is . . .delayed for non-medical reasons, a case of deliberate indifference has been made out." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir.1987) (alterations in original) (internal quotation marks and citation omitted). However, "[a]llegations of medical malpractice or mere disagreement as to the proper medical treatment are insufficient to establish a constitutional

23

violation." *Szemple v. Univ. of Med. & Dentistry*, No. 11–1376, 2011 WL 5562668 at *8 (3d Cir. Nov.16, 2011) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)).

Here, Plaintiff's allegations are insufficient to establish an Eighth Amendment violation by Dr. Lopez de Lasalle. Plaintiff alleges that Dr. Lopez de Lasalle discontinued Plaintiff's metaformin medication for his diabetes and did not renew his soft shoe authorization or his bottom bunk pass. However, Plaintiff's allegations amount to, at most, medical negligence, which is insufficient to state a claim for a constitutional violation. Indeed, Plaintiff alleges that in July of 2019, Dr. Lopez de Lasalle examined him, reviewed his recent lab results showing an A1C level indicating that his diabetes was in control, and determined that he no longer needed to be on medication. *See Ginyard v. Del-Prete*, No. CV 20-1947, 2022 WL 17492412, at *6 (W.D. Pa. Sept. 21, 2022), *report and recommendation adopted*, No. CV 20-1947, 2022 WL 16832676 (W.D. Pa. Nov. 9, 2022) (denying Eighth Amendment claim of inmate who claimed that he had been denied medical care for diabetes by failing to order blood tests, as staff reviewed his tests from within the past year, which were within normal limits). Although Plaintiff now disagrees with this course of treatment given the outcome, he has not alleged or otherwise shown that Dr. Lopez de Lasalle intentionally or recklessly made a decision that was likely to harm Plaintiff. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (deliberate indifference is shown when a prison official is aware of facts from which she can infer that a substantial risk of harm exists, and she also draws such an inference). *See also Alsop v. Fed. Bureau of Prisons*, No. 22-1933, 2022 WL 16734497, at *2 (3d

Cir. Nov. 7, 2022) ("Alsop has not shown that when Dr. Santos-Stahl elected to pursue the conservative treatment, she had reasons to believe that Alsop faced substantial harm without the vascular surgery"); *Hodge v. United States Dep't of Justice*, 372 Fed. Appx. 264, 268 (3d Cir.2010) ("disagreements . . . among physicians, concerning the course of medical treatment ... do not support a claim for a violation of the Eighth Amendment."); *Ham v. Greer*, 269 Fed. Appx. 149, 151 (3d Cir. 2008) ("Ham's primary dispute, in essence, is that he did not receive the kind or quality of treatment that he would have preferred. This simply does not rise to the level of a violation of a constitutionally protected right.").

Although Plaintiff alleges that Dr. Lopez de Lasalle referenced the expense of the medication during his visit, crucially, he does not allege that Dr. Lopez de Lasalle denied him treatment for non-medical reasons. Rather, he alleges that after her medical examination and review of his records showing that his diabetes was under control, Dr. Lopez de Lasalle told him that she would not make "BOP pay for something Plaintiff did not need." That is, he does not allege Dr. Lopez de Lasalle told him that the cost was the reason for her treatment decision, but rather that it would be unreasonable to expend BOP resources on a medically unnecessary course of treatment. Plaintiff has thus provided "no basis for second-guessing [Dr. Lopez De Lasalle's] decisions, let alone concluding that [she] violated his Eighth Amendment rights." *Alsop*, 2022 WL 16734497, at *2 (citing *U.S. ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

Thus, the Court should dismiss Plaintiff's *Bivens* claim because Dr. Lopez de Lasalle is protected by qualified immunity.

**III.**   **Statute of Limitations Bars Plaintiff's *Bivens* Claim**

The Court should also dismiss Plaintiff's *Bivens* claim against Defendant Lopez de Lasalle because he failed to bring it within the statute of limitations. For a plaintiff bringing a *Bivens* action, "the statute of limitations is taken from the forum state's personal injury statute," which, in New Jersey, is two years. *McGill v. John Does A-Z*, 541 F. App'x 225, 227 (3d Cir. 2013). "While state law provides the applicable statute of limitations, federal law controls when a Bivens claim accrues." *Peguero v. Meyer*, 520 F. App'x 58, 60 (3d Cir. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Under federal law, a *Bivens* claims accrues when a plaintiff knows of or has reason to know of the injury. *Sameric Corp. v. City of Phila.,* 142 F.3d 582, 599 (3d Cir. 1998).

In this case, Plaintiff brought his *Bivens* claim against Dr. Lopez de Lasalle based on conduct that took place between July 10, 2019—when Dr. Lopez de Lasalle examined plaintiff and discontinued his medication, soft shoes, and lower bunk pass—and November 23, 2019, when Plaintiff had his toe amputated.[4] *See* Compl. at 20-21. Plaintiff, however, did not file his complaint until February 15, 2022. Because Plaintiff failed to bring his *Bivens* claim within the two-year period, he

---

[4] Plaintiff admittedly was aware of the alleged shortcoming of medical staff, and allegedly explained his disagreement with the prescribed diabetes treatment plan in July of 2019. *See* Compl., at 14.

failed to comply with the statute of limitations, and the Court should dismiss the claim. *See Jeffries v. Ortiz,* No. 18-1146 (RBK), 2020 WL 948797, at *6 (D.N.J. Feb. 27, 2020); *Fisher v. Hollingsworth,* No. 18-16793 (RBK), 2019 WL 2151348, at *4-5 (D.N.J. May 17, 2019); *Vasquez v. Batiste,* No. 14-4366 (RBK), 2015 WL 4569706, at *3 (D.N.J. July 23, 2015).

## IV.  <u>Plaintiff Failed to Exhaust Administrative Remedies as to FTCA Claim</u>

Plaintiff's FTCA claim against the United States cannot proceed because he has not complied with the FTCA's administrative exhaustion requirement. "The United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Absent a specific waiver of sovereign immunity, courts lack subject matter jurisdiction over claims against the federal government and its agencies. *See, e.g.*, *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1085 (3d Cir. 1992) (citations omitted); *Jaffee v. United States*, 592 F.2d 712, 718 (3d Cir. 1979).

The FTCA, which provides the exclusive remedy for tort claims against the United States, is a limited waiver of sovereign immunity. *See Santos v. United States*, 559 F.3d 189, 193 (3d Cir. 2009). Pursuant to that statute, the United States is liable to the same extent as a private party, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any

employee of the Government while acting within the scope of his office or employment." 28 U.S.C. §§ 1346(b), 2679(b)(1).

Although the United States has waived sovereign immunity for certain tort claims through the FTCA, a number of exceptions and conditions—including a jurisdictional administrative exhaustion requirement—expressly limit this waiver. *See* 28 U.S.C. §§ 2679-80; *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218 (2009); *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 457 (3d Cir. 2010). Under the FTCA, a plaintiff may not bring suit against the United States

> for money damages for injury or loss of property or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing.

28 U.S.C. § 2675(a); *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003). The FTCA further specifies that a tort claim against the United States

> shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b); *Sconiers*, 896 F.3d at 598.

Thus, to bring a timely FTCA claim, a plaintiff must comply with two separate time limits: (1) first, he must file a claim with the appropriate federal agency within two years of the accrual of the claim and (2) file a lawsuit within six months of the date the agency mails out the notice of final denial.  *See id.* "Because the Federal Tort Claims Act constitutes a waiver of sovereign immunity," federal courts strictly

construe the statute's established procedures, including the two time limits set out in § 2401(b).  *Young v. United States*, No. 18-2338 (CCC), 2019 WL 3451565, at *2 (D.N.J. July 31, 2019) (quoting *White-Squire*, 592 F.3d at 456).

Accordingly, it is clear and mandatory that, a claimant must first present any tort claim against the United States to the relevant federal agency within two years after the claim accrues, as a condition precedent to suit. *McNeil v. United Statesl*, 508 U.S. 106, 107 & n.1 (1993);  *Melo v. United States*, 505 F.2d 1026, 1028 (8th Cir. 1974). If a plaintiff files suit without first having submitted a timely claim for administrative adjustment, the suit must be dismissed for lack of subject matter jurisdiction. *McNeil*, 508 U.S. at 111−12.  Likewise, if a plaintiff submits an administrative claim to the agency and then files a complaint either before the agency has finally denied the claim in writing or before the six-month period for agency action has expired, the complaint must also be dismissed. *See, e.g.*, *Wadhwa v. Nicholson*, 367 F. App'x 322, 324 (3d Cir. 2010).

In this case, although Plaintiff did file an administrative tort claim with the BOP, he filed suit well before BOP adjudicated his claim and before the six-month period for agency action expired. He first submitted an administrative tort claim on October, 12, 2021, seeking $ 1 million as compensation for his amputation on November 23, 2019. *See* Kerr Decl., Attach. 1. However, he improperly mailed the claim to the BOP Central Office in Washington, DC instead of the BOP Northeast Regional Office, as mandated by 28 C.F.R. § 543.31(c), and failed to sign the SF-95, as required 28 C.F.R. § 14.2. *Id*. On November 22, 2021, after the BOP Central Office

forwarded the claim to the Northeast Regional Office, the regional office rejected the filing because Plaintiff of Plaintiff's failure to sign the SF-95. *See id.*, Attach. 2. On December 28, 2021, Plaintiff resubmitted his administrative tort claim to the BOP Northeast Regional Office and on January 14, 2022, the region sent Plaintiff and acknowledgment indicating they had 6 months from the date of receipt to review, consider, and adjudicate the claim.  *Id.*, Attach. A and B. Plaintiff disregarded this advisement, and, on February 15, 2022, prematurely filed his FTCA complaint before receiving any dentil from the BOP. *See* Compl.

In cases such as this, when prisoners file suit prior to receiving an administrative decision on their tort claim, courts routinely dismiss FTCA claims for failure to exhaust. *See, e.g., Gambino v. Cassano*, No. 17-0830 (NLH), 2022 WL 4536469, at \*14 (D.N.J. Sept. 28, 2022) (dismissing FTCA claim where inmate "did not complete exhaustion before he filed his amended complaint").

Accordingly, the Court should dismiss Plaintiff's FTCA claim because he failed to comply the with FTCA's administrative exhaustion requirement.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Plaintiff's claims under Rules 12(b)(1) 12(b)(6).

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

Dated: March 23, 2023            By:    <u>/ s / *Peter G. Vizcarrondo*  </u>
                                        PETER G. VIZCARRONDO
                                        Assistant U.S. Attorney
                                        *Attorneys for Federal Defendants*