12652-1
Gregory J. Irwin, Esq. (Atty. ID # 23531979)
girwin@harwoodlloyd.com
Harwood Lloyd, LLC
130 Main Street
Hackensack, New Jersey 07601
(201) 487-1080
*Pro Bono* Counsel for Plaintiff, Rolando Muniz

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

## DOCUMENT ELECTRONICALLY FILED

|  |  |
|---|---|
| ROLANDO MUNIZ, | **Civil Action No. 22-cv-816 (NLH) (MJS)** |
| *Plaintiff,* | |
| v. | |
| UNITED STATES OF AMERICA, et al. | |
| *Defendants.* | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Gregory J. Irwin, Esq.
Of Counsel and On the Brief

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... ii

FACTUAL BACKGROUND ........................................................................ 2

ARGUMENT ............................................................................................... 9

I.  PLAINTIFF'S CLAIMS ARE NOT A NEW *BIVENS* CONTEXT,
    NOR DO SPECIAL FACTORS COUNSEL TOWARD HESITATION ............. 9

    A. Plaintiff's claim against Dr. Lopez de Lasalle is not an extension of
    *Bivens*, as Plaintiff's claims do not present a new context. .......................... 10

    B.  Even if the Court finds that Plaintiff's claim is an extension of *Bivens*,
    it is a modest one and the "special factors" analysis in *Ziglar v. Abassi*
    counsels in favor of permitting Plaintiff's *Bivens* claim to proceed ............. 15

II. DR. LOPEZ DE LASALLE IS NOT ENTITLED TO QUALIFIED
    IMMUNITY ........................................................................................ 18

III. THIS COURT SHOULD APPLY EQUITABLE TOLLING TO
     PLAINTIFF'S CLAIMS. ...................................................................... 23

IV.  DISMISSAL OF PLAINTIFF'S FTCA CLAIM AS PREMATURE
     IS UNWARRANTED ........................................................................... 28

IV.  PLAINTIFF'S COMPLAINT STATES VALID CLAIMS AND
     DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED ............... 31

CONCLUSION ........................................................................................... 33

# TABLE OF AUTHORITIES

*Cases:*

*Adams v. United States*, 615 F.2d 284 (5th Cir. 1980)............................................. 30

*Ancata v. Prison Health Servs.,* 769 F.2d 700 (11ᵗʰ Cir. 1985) .............................. 14

*Anderson v. Creighton*, 483 U.S. 635 (1987) ..................................................... 19; 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................. 32

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................... 32

*Berardi v. Swanson Mem'l Lodge No. 48*, 920 F.2d 198 (3d Cir. 1990) .............. 31

*Bistrian v. Levi,* 912 F.3d 79 (3d Cir 2018)....................................................... 16; 17

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) ...................................................................................... 9; 13

*Carlson v. Green*, 446 U.S. 14 (1980)......................................................... 9; 10; 11

*Conn v. Gabbert*, 526 U.S. 286 (1999) ................................................................. 20

*Davis v. Passman*, 442 U.S. 228 (1979)................................................................. 9

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
   489 U.S. 189 (1989) ......................................................................................... 18

*Doty v. Hollingsworth*, 2018 U.S. Dist. LEXIS 50414
   (D.N.J. Mar. 27, 2018) ..................................................................................... 12

*Egbert v. Boule*, 142 S. Ct. 1793 (2022)......................................................... 9; 12-13

*Estelle v. Gamble*, 429 U.S. 97 (1976)......................................................... 19; 21-22

*Falciglia v. Erie Cnty. Prison*, 279 F. App'x 138 (3d Cir. 2008) ........................... 14

*Farmer v. Brennan*, 511 U.S. 825 (1994)................................................... 12; 18; 19

*Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997) ........................................ 14

*Haines v. Kerne*, 404 U.S. 519 (1972) ...................................................... 32

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ......................................... 19; 20

*Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261
  (3d Cir. 2016) ...................................................................................... 31

*Hedges v. United States*, 404 F.3d 744 (3d Cir. 2005) ........................... 24

*Helling v. McKinney*, 509 U.S. 25 (1993) ................................................ 19

*Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754 (3d Cir. 1979) ............. 15

*In re Kemmler*, 136 U.S. 436 (1890) ....................................................... 21

*Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89 (1990) ...................... 24; 26

*Jones v. Bock*, 549 U.S. 199 (2007) ........................................................ 24

*Kedra v. Schroeter*, 876 F.3d 424 (3d Cir. 2017) ................................... 32

*Lozano v. Montoya Alvarez*, 134 S. Ct. 1224 (2014). .............................. 27

*Lopez v. United States*, 823 F.3d 970 (10th Cir. 2016) ........................... 30

*Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020) ........................................ 17-18

*McCann v. Newman Irrevocable Tr.*, 458 F.3d 281 (3d Cir. 2006) ......... 31

*McNeil v. United States*, 508 U. S. 106 (1993) ...................................... 27

*Michels v. United States*, 31 F.3d 686 (8th Cir. 1994) .......................... 30

*Monmouth County Correctional Institutional Inmates v. Lanzaro*,
  834 F.2d 326 (3d Cir. 1987) ........................................... 14-15; 22-23

*Moore v. Florida*, 703 F.2d 516 (11th Cir. 1983) ................................... 27

*Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000)................................................................ 16

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)..................................... 32

*Robinson v. Dalton*, 107 F.3d 1018 (3d Cir. 1997). .................................................. 24

*Santos ex rel. Beato v. United States*, 559 F.3d 189 (3d Cir. 2009) ....................... 28

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014)................................................28-29

*Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236 (3d Cir. 1999)................. 24

*Smoke Shop, LLC v. United States*, 761 F.3d 779 (7th Cir. 2014)........................... 30

*Todaro v. Ward,* 565 F.2d 48 (2d Cir. 1977) .............................................................. 15

*United States v. Kwai Fun Wong*, 575 U.S. 402 (2015)....................................26-27

*Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958
   (11th Cir. 2016) ...................................................................................................... 29

*Westlake v. Lucas,* 537 F.2d 857 (6th Cir. 1976) ...................................................... 14

*Wilson v. Layne*, 526 U.S. 603 (1999).......................................................................... 20

*Young v. Quinlan*, 960 F.2d 351 (3d Cir. 1992)........................................................ 14

*Youngberg v. Romeo*, 457 U.S. 307 (1982)................................................................. 19

*Ziglar v. Abassi*, 582 U.S. 120 (2017) .......................................................10; 16; 17

**Court Rules and Statutes:**

28 C.F.R. § 14.2 .............................................................................................................. 25

28 C.F.R. § 542.13.......................................................................................................... 24

28 C.F.R. § 542.14.......................................................................................................... 24

28 C.F.R. § 542.15.......................................................................................................... 25

28 U.S.C. § 2675 ................................................................................................ 30

Federal Rule of Civil Procedure 12(b)(1) ........................................................ 31

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 31

## FACTUAL BACKGROUND

Plaintiff, Rolando Muniz ("Plaintiff" or "Muniz"), brings this action against Defendant Dr. Leslie Lopez de Lasalle ("de Lasalle"), alleging deliberate indifference in contravention of his Eighth Amendment rights, and against Defendant United States of America, pursuant to the Federal Tort Claims Act ("FTCA").

In 2011, while incarcerated in GEO San Antonio, Texas, Plaintiff was diagnosed with diabetes. ECF document 1, Plaintiff's Complaint. ("Comp.") at 4, para. 1. By 2014, Plaintiff was fully diabetic. Comp. at 4, para. 2. As a result of this medical condition, Plaintiff was placed on Metformin, a medication used to help regulate blood sugar. Comp. at 4, para. 2. He was also given a soft shoe pass due to diabetic ulcers on his feet. Comp. at 5, para. 3. In September 2018, plaintiff was placed in the Special Housing Unit ("the SHU"), in which he remained for approximately 10 months. Comp. at 5, paras. 5-6. By June 2019, while still in the SHU, Plaintiff's A1C reading fell to 6.1%. Comp. at 5, para. 7. By the end of his 10-month period in the SHU, plaintiff was transferred to FCI Fairton in Fairton, New Jersey, where he was released into the general population. Comp. at 5, para. 8.

At FCI Fairton, Plaintiff was treated by Defendant, Dr. Leslie Lopez de Lasalle, who advised Plaintiff that she was taking Plaintiff off of Metformin

because Plaintiff was "not diabetic."  Comp. at 5-6, paras. 9-10.  Plaintiff protested this decision and advised Defendant de Lasalle that his A1C reading was taken at a time when he had been starving and that his A1C would be higher now that he was in the general population.  Comp. at 6, para. 11.  He assured Dr. de Lasalle that he was in fact diabetic.  *Id.*  Despite Plaintiff's representations, Dr. de Lasalle refused to continue Plaintiff on Metformin, saying that "there was no point for BOP to spend money on something Plaintiff did not need."  Comp. at 6, paras. 11-12.  Dr. de Lasalle also refused to renew Plaintiff's soft shoe and bottom bunk passes.  Comp. at 6, paras. 13-14.  Plaintiff was forced to wear institutional hard shoes and utilize top bunks.  Comp. at 6-7, paras. 15-16.  As a result, Plaintiff's diabetic ulcers began deteriorating at a rapid rate.  *Id.*

On November 7, 2019, medical staff performed a culture on Plaintiff's ulcers; daily wound care was prescribed.  Comp. at 7, para. 18.  Nevertheless, on at least six (6) of ten (10) days, medical staff refused to provide the aforementioned wound care.  *Id.*  On November 18, 2019, after being seen by medical staff at the prison, Plaintiff was taken to the emergency room at Inspira Medical Center in Vineland, New Jersey, where he was initially treated with antibiotics.  Comp. at 7-8, para. 21-22.  Due to the severity of Plaintiff's condition, on November 21, 2019, Plaintiff's left second toe was amputated.  Comp. at 8, para. 24; *see also* Operative Record, page 72 of 87 of Plaintiff's Complaint.  He was thereafter returned to FCI

Fairton.  Comp. at 8, para. 24.  In December 2019, Dr. de Lasalle restarted Plaintiff

on Metformin.  Comp. at 8, para. 25.

On December 16, 2019, Muniz began to pursue his administrative remedies.

He complained about Dr. de Lasalle and her inadequate medical care and submitted

an informal resolution form, i.e. a form BP-8.  *See* Exhibit A to Certification of

Gregory J. Irwin, Esq. ("Irwin Cert.").  The attachment to the form is dated

December 21, 2019 and requests relief as follows: (1) an investigation into Dr. de

Lasalle's decision to discontinue his diabetic medication, his soft shoe pass and

bottom bunk pass to save money; (2) a copy of his entire medical file from 2011

until the date of the filing; and (3) monetary compensation for pain and suffering.

*See* Exhibit A to Irwin Cert.

Muniz did not receive a response to his form BP-8 and filed a form BP-9 on

January 27, 2020.  *See* Exhibit B to Irwin Cert.  No response was received.

On March 18, 2020, Muniz filed a Regional Administrative Remedy Appeal,

complaining that no response had been received to his two prior complaint forms,

the BP-8 in 2019 and the BP-9 in January 2020.  *See* Exhibit D to Irwin Cert.  He

reiterated his complaints regarding his inadequate medical care and the fact that his

rights to due process and adequate medical care had been violated.  *Id.*

The Acting Warden issued a response on March 20, 2020.  *See* Exhibit C to

Irwin Cert.  The Warden's response states, in part:

A review of your relief requesting that a member of our medical staff be investigated is not something that is done here. Copies of all correspondence relating to your medical care can be obtained by request. A request was found in your medical record and those should be forthcoming in the near future. Any monetary compensation claim will need to go through the Tort Process and this is requested through the regional office.

Accordingly, this response is for informational purpose [sic] only. If you are dissatisfied with this response, you may appeal to the Regional Director, Northeast Regional Office, U.S. Customs House, 7th Floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania, 19106. Your appeal must be received in the Regional Office within 20 days of the date of this response.

*See* Exhibit C to Irwin Cert.

Muniz received no response to the March 2020 appeal filing and sent a BP-10 on September 10, 2020. *See* Exhibit G to Irwin Cert. At this time, COVID-19 was at a pandemic level and the prison was in lock down.

On January 26, 2021, Regional Director N. C. English issued a response to the March 2020 appeal filing. *See* Exhibit E to Irwin Cert. English states:

You appeal the response of the Warden of FCI Fairton and contend you did not receive appropriate medical treatment for a wound on your left foot. You claim Medical Staff discontinued your diabetic medication and medical shoes, resulting in amputation of your left second toe. You request monetary compensation.

A review of your appeal reveals the Warden adequately addressed your complaint in his response. You cannot seek monetary compensation through the Administrative Remedy process. If you believe you have suffered an injury and are entitled to compensation, you may consider filing a tort claim pursuant to the procedures set

forth at 28 C.F.R. § 543, and Program Statement 1320.06, <u>Federal Tort Claim Act</u>. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

*See* Exhibit E to Irwin Cert.

A copy of this response was not delivered to Muniz until April 9, 2021.  *See* Exhibit F to Irwin Cert., correspondence from S.  Robinson, B Unit Manager. Within the necessary timeframe, Muniz filed an appeal on April 27, 2021.  *See* Exhibit G to Irwin Cert.

On June 21, 2021, Ian Connors, Administrator, National Inmate Appeals, responded to Muniz as follows:

This is in response to your Central Office Administrative Remedy Appeal wherein you allege deliberate indifference you have received inadequate medical care for a left foot wound. You claim your clinical provider exposed you to substantial risk of harm and was the proximate cause of your toe amputation. For relief, you request an investigation, a copy of your entire medical record and monetary compensation.  We have reviewed documentation relevant to your appeal and, based on our findings, concur with the manner in which the Warden and Regional Director responded to your concerns at the time of your Request for Administrative Remedy and subsequent appeal. Based on this information, there is no evidence to substantiate your claim of being denied appropriate medical care. We also do not find evidence to substantiate your contention of deliberate indifference on the part of medical staff; therefore, we find no rational warranting your request for investigation.

Regarding your request for your entire medical record, you can submit an Inmate Request to Staff form to request the portion of your medical record you would like to acquire.

Regarding your request for monetary compensation, Program Statement 1330.18, <u>Administrative Remedy Program</u>, does not provide such relief. There are statutorily-mandated procedures in place for addressing such requests. Therefore, your request will not be considered in this response.

The record reflects you have received medical care and treatment in accordance with evidence based standard of care and within the scope of services of the Federal Bureau of Prisons. You are encouraged to comply with proposed medical treatment so Health Services can continue to provide essential care and to contact medical personnel through routine sick call procedures should your condition change.

Considering the foregoing, this response is provided for informational purposes only.

*See* Exhibit H to Irwin Cert.

When all of his internal efforts proved fruitless, Plaintiff Muniz attempted to fulfill the requirements of the Federal Tort Claims Act. On October 12, 2021, Plaintiff attempted to file Administrative Tort Claim Number TRTNER-2022-01040, with the Federal Bureau of Prisons requesting a sum certain of $1 million dollars as compensation for his amputated toe in November 2019. See Declaration of Jonathan Kerr, attached to Defendants' motion to dismiss, para. 3 and attachment 1. Unfortunately, he mailed the claim to the BOP Central Office in

Washington, D.C. instead of to the BOP Northeast Regional Office.  Plaintiff Muniz did not sign the SF-95.

According to Defendants, the BOP Central Office forwarded the claim to the Northeast Regional Office.  On November 22, 2021, the Regional Office rejected the filing because Plaintiff failed to sign the tort claim.  See Declaration of Jonathan Kerr, attached to Defendants' motion to dismiss, para. 3 and attachment 2.  Muniz continued the pursuit of his administrative remedies with the Federal Bureau of Prisons, Northeast Regional Office, who again received his complaint on December 28, 2021.  See Declaration of Jonathan Kerr, attached to Defendants' motion to dismiss, para. 3 and attachment 3.  Although correspondence acknowledging his complaint is dated January 14, 2022, to date, Muniz has received no response to his claim.  See Declaration of Jonathan Kerr, attached to Defendants' motion to dismiss, para. 3 and attachment 4.

## ARGUMENT

For the reasons that follow, Defendants' Motion to Dismiss Plaintiff

Muniz's Complaint should be denied.

### I. PLAINTIFF'S CLAIMS ARE NOT A NEW *BIVENS* CONTEXT, NOR DO SPECIAL FACTORS COUNSEL TOWARD HESITATION.

Defendant Lopez de Lasalle argues that Plaintiff's motion to dismiss is an

extension of *Bivens* into a new context.  This is not the case.

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, the

United States Supreme Court held that a federal agent's violation of an individual's

constitutional rights gives rise to a cause of action in federal court for damages

consequent upon the agent's unconstitutional conduct.  *Bivens v. Six Unknown

Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971).  In the years

following *Bivens*, the Supreme Court has recognized implied causes of action in

two other cases: *Davis v. Passman*, 442 U.S. 228 (1979) (implying a cause of

action where an administrative assistant sued a Congressman for firing her because

she was a woman) and *Carlson v. Green*, 446 U.S. 14 (1980) (discussed below).

Since its decision in *Bivens*, the Supreme Court has set forth a two-step

framework for determining whether a Court should recognize a cause of action

under *Bivens*.  The first inquiry is whether the case presents a new *Bivens* context.

*See Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022).  If the answer is yes, the *Bivens*

remedy is unavailable if "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.*

### A. Plaintiff's claim against Dr. Lopez de Lasalle is not an extension of *Bivens*, as Plaintiff's claims do not present a new context.

The test for determining whether a case presents a new *Bivens* context is: "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Ziglar v. Abassi*, 582 U.S. 120, 136 (2017). In *Ziglar*, the Supreme Court provided a non-exhaustive list of differences that are meaningful enough to make a given context a new one: the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider. *Id.* at 139-140. These factors are not at issue herein.

The instant case is akin to *Carlson v. Green*, wherein the respondent brought suit in federal court, alleging her son (Joseph Jones) suffered personal injuries from which he died because federal prison officials, including his doctors, violated, among other things, his Eighth Amendment rights. *Carlson v. Green*, 446 U.S. 14

(1980).  Specifically, the respondent alleged that the federal prison officials, being fully apprised of the "gross inadequacy" of medical facilities and staff at the federal prison, and of Jones' chronic asthmatic condition, kept in him the medical facility against the advice of doctors, failed to give him competent medical attention for some eight hours after an asthma attack, administered contraindicated drugs that worsened his condition, attempted to use a respirator known to be inoperative, and delayed his transfer to an outside hospital.  *Id.* at 16, n. 1.  Among the questions that had to be decided by the Supreme Court was whether there was a remedy available directly under the Constitution, given that the respondent's allegations could also support a suit against the United States under the Federal Tort Claims Act.  *Carlson*, 446 U.S. at 16.  The Court answered that question with a resounding "yes."  *See id., generally*.  The Court further held that there were no special factors counseling hesitation in the absence of affirmative action by Congress.  *Id.* at 19.

The facts herein present the very same context that *Carlson* did: a federal inmate alleging that his Eighth Amendment rights were violated by a prison doctor who failed to render proper medical care for a chronic medical condition.  There is no meaningful difference between Mr. Muniz's allegations in this case and those made by the respondent in *Carlson*.

This Court has held that *even Eighth Amendment cases that arise outside of the medical context* could survive a motion to dismiss based on *Carlson*. In *Doty v. Hollingsworth*, the plaintiff, an inmate that was confined at the Federal Correctional Institution in Fort Dix, New Jersey, sued various prison officials alleging that his Eight Amendment rights were violated when they failed to protect him from an attack by an unknown inmate. *Doty v. Hollingsworth*, 2018 U.S. Dist. LEXIS 50414, at *1-*6 (D.N.J. Mar. 27, 2018). Prior to the Supreme Court's decision in *Ziglar*, this Court denied the prison officials' motion to dismiss the plaintiff's Complaint, citing the deliberate indifference standard in *Farmer v. Brennan*, 511 U.S. 825 (1994). *Id.* at *5-6. In light of the Supreme Court's decision in *Ziglar*, the defendants moved for reconsideration, which this Court granted. *Id.* at *6; *see also id.* at *12. Nevertheless, despite granting reconsideration, this Court denied the defendants' motion, explicitly holding that the plaintiff's failure to protect claim was "not different in a meaningful way from *Carlson* and *Farmer*." *Id.* at *10.

Defendants cite to *Egbert v. Boule,* 142 S. Ct. 1793, 1803 (2022); however, that case is inapposite to the instant one for several reasons. First, in *Egbert*, a motel owner sued a federal law enforcement agent for use of excessive force in violation of the Fourth Amendment, as well as First Amendment retaliation. *Egbert*, 142 S. Ct. at 1797. Accordingly, the underlying facts in *Egbert* are

completely different from those presented in this case, which are meaningfully identical to the facts presented in *Carlson*. Further, the claims in *Egbert* clearly presented a new context for the Court. The Court of Appeals in *Egbert* even conceded that the plaintiff's claim presented a new context for *Bivens* purposes. *Id.* at 1804. Lastly, the Supreme Court's decision in *Egbert*, at least with regard to the motel owner's Fourth Amendment claims, were clearly rooted in national security concerns, an issue that is not presented here. *Id.* at 1805 (stating that the Judiciary is "ill suited to decide whether a damages remedy against any Border Patrol agent is appropriate.").

Further, the Supreme Court has declined to overturn *Bivens* and its progeny despite multiple opportunities to do so. Therefore, *Carlson* is still valid law. Defendants present no reason why *Carlson* should be limited to acute medical emergencies. Moreover, no court has ever suggested that a *Bivens* claim is available only to an inmate who *dies* because of an official's deliberate refusal to provide life's necessities, and not to an inmate who survives mistreatment by the same officials, yet suffers only serious, irreparable harm. Defendants point to nothing in *Bivens* or its progeny recognizing a categorical difference between death and severe bodily harm or even considering the quantum of harm inflicted so long as the Eighth Amendment is violated. The deterrent aim of *Bivens* would be

powerfully undermined by a rule limiting prisoner recovery to death-only outcomes.

Defendants' obligation to ensure that prisoners are afforded "the minimal civilized measure of life's necessities" applies equally to "food, clothing, shelter, sanitation, [and] medical care." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997), quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992); *see, e.g.*, *Falciglia v. Erie Cnty. Prison*, 279 F. App'x 138, 141 (3d Cir. 2008).

In support of their position, Defendants cite to a host of unpublished decisions from other jurisdictions that are not binding on this Court. However, other jurisdictions have also found deliberate indifference in cases such as alleged by Plaintiff Muniz. Where jail officials deny reasonable requests for medical treatment, and such denial exposes the inmate to "undue suffering or the threat of tangible residual injury," deliberate indifference is manifest. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987), quoting *Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir. 1976). Similarly, where "knowledge of the need for medical care [is accompanied by the] … intentional refusal to provide that care," the deliberate indifference standard has been met. *Lanzaro*, 834 F.2d at 346-47, quoting *Ancata v. Prison Health Servs., 769* F.2d 700, 704 (11th Cir. 1985). Short of absolute denial, "if necessary medical treatment is … delayed for non-medical reasons, a case of deliberate indifference has been

made out." *Id.* at 704.  Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that "result in interminable delays and outright denials of medical care to suffering inmates." *Lanzaro*, 834 F.2d at 346-47, quoting *Todaro v. Ward,* 565 F.2d 48, 53 (2d Cir. 1977).  Finally, deliberate indifference is demonstrated "when ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to physician capable of evaluating the need for such treatment." *Lanzaro*, 834 F.2d at 346-47, quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

Dr. Lopez de Lasalle discontinued Plaintiff Muniz's diabetes medication, soft shoes, and low bunk pass, resulting in the development of a diabetic ulcer that led to the amputation of his toe.  This is an irreversible loss.  Dr. de Lasalle demonstrated deliberate indifference to Plaintiff Muniz's well-documented pre-existing medical condition.  *Bivens* was designed to prevent the type of conduct exhibited by Dr. de Lasalle in this case.  Defendants' motion should be denied.

**B. Even if the Court finds that Plaintiff's claim is an extension of *Bivens*, it is a modest one and the "special factors" analysis in *Ziglar v. Abassi* counsels in favor of permitting Plaintiff's *Bivens* claim to proceed.**

Because this case does not present a new *Bivens* context, there is no reason for this Court to reach *Ziglar v. Abbasi*'s "special factors" analysis. If, however, the Court does reach the question, the relevant special factors—namely, the absence of

an alternative remedial structure and the lack of separation-of-powers concerns, *see Ziglar*, 137 S. Ct. at 1857–58—support permitting a *Bivens* action to remedy the individualized harm that Plaintiff Muniz suffered at the hands of prison officials. This case is so similar to *Carlson* that there is no extension of *Bivens* at all, but at most, the extension is trivial and readily justified.

Even if this Court were to view Plaintiff's claim against Dr. Lopez de Lasalle as an extension of *Bivens*, in light of *Carlson*, it would only be a modest one. No "special factors" counsel against any marginal extension of the doctrine. *Ziglar v. Abbasi*, 137 S. Ct. at 1857–58. As in *Carlson*, Plaintiff Muniz has no access to an adequate alternative remedial scheme, so this is a case where "it is damages or nothing." *Bistrian v. Levi,* 912 F.3d 79, 92 (3d Cir 2018), quoting *Ziglar v. Abbasi*, 137 S. Ct. at 1862. Starting with the Bureau of Prisons' administrative remedy program, this Court in *Bistrian* explained that—as is true here— because Muniz suffered past physical injuries, "[t]he administrative grievance process is not an alternative because it does not redress [the prisoner]'s harm, which could only be remedied by money damages." *Id.* at 92; *see id.* (noting that "money damages are 'not available under the Bureau of Prisons' administrative process,'" quoting *Nyhuis v. Reno*, 204 F.3d 65, 70 (3d Cir. 2000). Additionally, *Ziglar v. Abbasi* was clear that the separation-of-powers concerns animating the limitations on *Bivens* remedies result from alternative remedial

schemes created *by Congress*, not, as here, remedial schemes created by administrative agencies.  *See Ziglar v. Abbasi*, 137 S. Ct. at 1858.

And as in *Carlson*, because Muniz attempts to hold only prison officials to account for their targeted misconduct, no "separation-of-powers principles counsel against providing a *Bivens* remedy in suits like this." *Bistrian*, 912 F.3d at 93. To the contrary—as *Carlson*'s continued vitality attests—cases like this are exactly what *Bivens* seeks to remedy.  Just as *Carlson* allowed a claim against prison officials for deliberate indifference in the face of severe asthma, this case involves a claim against prison officials for deliberate indifference in the face of diabetes. Like the claim in *Carlson*, the claim here raises no separation-of-powers concerns and is the only way to adequately remedy the prisoner's injuries.  Unlike cases involving sensitive concerns of national security or foreign policy where the Supreme Court has declined to extend *Bivens*, *see, e.g.*, *Abbasi*, 137 S. Ct. at 1861, Muniz's attempt to hold prison officials to account for the individualized abuse they inflicted on him is exactly where *Bivens* should apply.

Indeed, this Court's decision in *Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020), on which the Defendants rely, recognizes as much.  There, the Court found alternative remedial schemes adequate to address a prisoner's claim alleging retaliatory termination from his prison job where he could have sought "equitable remedies through the BOP" or "injunctive relief in federal court," including "reinstatement

to his job." *Mack*, 968 F.3d at 321. In doing so, this Court distinguished the prisoner's claim from claims like those at issue in *Carlson* and this case: "Notably, Mack did not sustain any physical injuries with resulting monetary loss, which may have otherwise caused us to create a damages remedy despite the availability of the BOP's administrative remedy." *Id.* Because that is exactly the case here, *Mack* serves only to counsel in favor of the existence of a *Bivens* remedy.

## II.   DR. LOPEZ DE LASALLE IS NOT ENTITLED TO QUALIFIED IMMUNITY.

Defendant de Lasalle cannot escape liability under the shield of qualified immunity.  It is clearly established that an official's deliberate indifference to serious medical needs in circumstances like those suffered by Muniz alleges violates the Eighth Amendment.

It is a constitutional maxim that when the government "takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989).  Although "[t]he Constitution does not mandate comfortable prisons," neither "does it permit inhumane ones, and . . . the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quotations

omitted).  That is, "[i]t is cruel and unusual punishment to hold convicted criminals in unsafe conditions," *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982), and therefore a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment," *Farmer*, 511 U.S. at 828.  This duty includes protecting incarcerated persons from the risk of contracting a "serious, communicable disease," *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quotation omitted), and caring for acute medical needs, *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).  When officials "strip [incarcerated persons] of virtually every means of self-protection and foreclose[ ] their access to outside aid, [they] are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833.  Instead, the Eighth Amendment required Defendants to "take reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (quotation omitted).  Defendants violated this duty by showing deliberate indifference to Plaintiff's conditions of confinement in violation of his Eighth Amendment rights.

"When government officials abuse their offices, 'action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees.'" *Anderson v. Creighton*, 483 U.S. 635, 638 (1987), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982).  "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999), quoting *Harlow*, 457 U.S. at 818. "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Id.* at 609, quoting *Conn v. Gabbert*, 526 U.S. 286 (1999) (slip op. at 4). "What this means in practice is that 'whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.'" *Id.* at 614, quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

"What 'clearly established' means in this context depends largely 'upon the level of generality at which the relevant 'legal rule' is to be established.'" *Wilson*, 526 U.S. at 614, quoting *Anderson v. Creighton*, 483 U.S. at 639. "'Clearly established' for purposes of qualified immunity means that 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 614-15, quoting *Anderson v. Creighton*, 483 U.S. at 640. "'This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held

unlawful, but it is to say that in light of the pre-existing law the unlawfulness must be apparent.'" *Id.* at 615, quoting *Anderson v. Creighton*, 483 U.S. at 640. "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established. *Id.*

In the instant case, Plaintiff alleges deliberate indifference in contravention of the Eighth Amendment.  The government has an obligation to provide medical care for those whom it punishes by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.* at 104.  "In the worst cases, such a failure may actually produce physical 'torture or a lingering death,' . . . . the evils of most immediate concern to the drafters of the [Eighth] Amendment." *Id.* at 103, quoting *In re Kemmler*, 136 U.S. 436 (1890).  "In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* at 103.  "The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common law view that 'it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.'" *Id.* at 103-04.  Therefore, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Id.* at 104.

"This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

In this case, Dr. de Lasalle knew not only that Plaintiff suffered from diabetes, but that Plaintiff was on Metformin and that Plaintiff utilized specialized footwear for his diabetes.  It is common knowledge among the general public—let alone a trained doctor—that diabetes is a permanent condition and that diabetics are at a disproportionate risk of amputation and serious health complications as a result of their condition.  Defendant's purposeful decision to remove Plaintiff from his medication and failure to monitor such a serious condition despite Plaintiff's pleas to continue his medication and continue the use of soft shoes is far greater than mere negligence.

Where prison authorities deny reasonable requests for medical treatment, and such denial exposes the inmate "to undue suffering or the threat of tangible residual injury," deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met. ... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny

access to a physician capable of evaluating the need for such treatment."

*Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d at 346 (citations

omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed

for nonmedical reasons, a case of deliberate indifference has been made out." *Id.*

(citations omitted). "Deliberate indifference is also evident where prison officials

erect arbitrary and burdensome procedures that 'result[] in interminable delays and

outright denials of medical care to suffering inmates.'" *Id.* at 347 (citation omitted).

   Dr. de Lasalle cannot hide behind the shield of qualified immunity.  She

exercised deliberate indifference when she refused to continue Plaintiff on

Metformin, saying that "there was no point for BOP to spend money on something

Plaintiff did not need."  She placed monetary concerns above Plaintiff Muniz's

health, causing the permanent amputation of his toe.  Defendants' motion to

dismiss must be denied.

## III.   THIS COURT SHOULD APPLY EQUITABLE TOLLING TO PLAINTIFF'S CLAIMS.

   Defendants allege that Plaintiff Muniz's claim against Dr. de Lasalle was

filed beyond the two year statute of limitations.  Plaintiff Muniz requests that the

Court equitably toll the deadline for the filing of his claim.  Pursuant to

the equitable tolling doctrine, a plaintiff may sue a defendant after the statute of

limitations has expired if there are inequitable circumstances which prevented him

from filing his claim in a timely manner. *See Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). Equitable tolling is an extraordinary remedy which courts apply "sparingly." *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005), citing *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990). Equitable tolling is available where (1) the defendant actively misled the plaintiff with regard to her claim; (2) the plaintiff has been prevented from asserting his rights in some extraordinary way; or (3) the plaintiff timely asserted his rights mistakenly in the wrong forum. *Id.* at 751, quoting *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997).

Plaintiff Muniz's toe was amputated on November 23, 2019. It is clear that Plaintiff pursued his internal administrative claim to the fullest extent with the BOP, beginning with his BP-8 dated December 16, 2019, and concluding with the June 21, 2021 correspondence from Ian Connors, Administrator, National Inmate Appeals. To determine whether a prisoner has exhausted his administrative remedies, courts look to the agency's applicable grievance procedure and rules, in this case, the BOP. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Pursuant to the BOP's administrative remedy program, an inmate must generally attempt to informally resolve the issue by presenting it to staff through a BP-8 form. *See* 28 C.F.R. § 542.13. If that fails to informally resolve the issue, then the inmate may submit a BP-9 form to the warden. *See* 28 C.F.R. § 542.14. An inmate who is

dissatisfied with the warden's response may appeal to the regional director with a BP-10, and an inmate who is dissatisfied with the regional director's decision may appeal to the general counsel in the central office, through a BP-11. *See* 28 C.F.R. § 542.15(a). An appeal to the general counsel is the final level of administrative appeal. *Id.*

During the time period at issue, the COVID-19 pandemic was at a high level and the prison was in lock down. Further, following his receipt of the June 2021 correspondence, Plaintiff Muniz, *pro se*, began his pursuit of his FTCA remedies. Plaintiff Muniz acted diligently at all times in pursuit of his claim, albeit in the improper forum. Thus, equitable tolling should apply.

Plaintiff attempted to file his FTCA claim notice in October 2021. However, he mistakenly mailed it to the incorrect address and failed to sign it. The office that received the claim forwarded it to the appropriate office. It is clear that by November 22, 2021, the proper office was in receipt of the claim, yet returned it as unsigned.

A claim has been presented to a federal agency when the plaintiff submits to the agency either (1) an executed Standard Form 95, or (2) other written notification of the incident that includes a claim of money damages in a sum certain. *See* 28 C.F.R. § 14.2. Here, Plaintiff filed his initial Claim Form with the Bureau of Prisons in October 2021, which was within 2 years required by the

FTCA.  Regardless of whether the initial complaint form was signed, the BOP had notice that Plaintiff was filing a claim against them for $1 million dollars for the amputation of his toe within the time period required by the FTCA.

It is well within the court's power to toll FTCA claims. *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015).  The Supreme Court has recognized the courts' power to equitably toll suits against the United States. In *Irwin v. Department of Veterans Affairs*, the Supreme Court found that "time bars in suits between private parties are presumptively subject to equitable tolling" and that the same rebuttable presumption applies to suits against the United States under a statute waiving sovereign immunity.  498 U.S. at 95-96.  In *United States v. Kwai Fun Wong*, the claimant Wong brought an FTCA claim against the United States alleging that she was falsely imprisoned for five days. While Wong presented her administrative claim to the appropriate governmental agency within two years of the alleged wrongdoing, she failed to commence her legal action before the six month anniversary of the denial of her administrative claim.  *United States v. Kwai Fun Wong*, 575 U.S. at 406.  Instead, Wong filed suit asserting non-FTCA claims prior to the administrative denial.  *Id*. at 406.  Wong eventually moved to amend her complaint to add an FTCA claim, at which time the Government moved to dismiss due to her failure to comply with § 2401(b).  *Id*. at 403.  The District Court rejected the Government's motion and ruled that "the court equitably tolled that

period for all the time between the Magistrate Judge's recommendation and its own order allowing amendment, thus bringing Wong's FTCA claim within the statutory deadline." *Id.* at 406. The Supreme Court noted a party may avoid having a suit barred under the FTCA for failing to file a timely claim if they "'pursued [their] rights diligently but . . . circumstance[s]' prevent[ed] [them] from meeting a deadline." *Id.* at 408, quoting *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1231-32 (2014).

Furthermore, the Supreme Court has advised "that the pleadings prepared by prisoners who do not have access to counsel be liberally construed and [has] held that some procedural rules must give way because of the unique circumstance of incarceration." *McNeil v. United States*, 508 U. S. 106, 113 (1993) (citations omitted); *see also Moore v. Florida*, 703 F.2d 516, 520 (11th Cir. 1983) ("Pro se prison inmates, with limited access to legal materials, occupy a position significantly different from that occupied by litigants represented by counsel"). Here, plaintiff's diligence in pursuing his claims without counsel, which was complicated by COVID-19 lock down and delays and the "unique circumstance of incarceration," warrants permitting him to have his day in court and the opportunity to establish the damages he suffered as a result of the defendants' negligence.

Plaintiff Muniz has been nothing but diligent in pursuing his legal claims under extremely difficult circumstances, complicated by the COVID-19 lock down. He should be given his day in court and the opportunity to establish the damages he has suffered as a result of the medical neglect on the part of the Defendants' agents. His damages are irreversible and permanent; his toe was amputated.

## IV.  DISMISSAL OF PLAINTIFF'S FTCA CLAIM AS PREMATURE IS UNWARRANTED.

Tort claims against the United States may not be brought unless the plaintiff notifies the agency; after the agency denies the claim or after six months have elapsed without a response from the agency – whichever happens first – the plaintiff has six months to file the claim in a federal district court. *See Santos ex rel. Beato v. United States*, 559 F.3d 189, 193 (3d Cir. 2009). This statute of limitations is a non-jurisdictional affirmative defense, and it may be extended by equitable tolling. *See id.* at 194-97. Affirmative defenses such as the statute of limitations can be the bases of a motion to dismiss, but "a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014). Accordingly, in *Schmidt*, the Court reversed the dismissal of a complaint on statute of limitations grounds "where the applicability of the discovery rule is not evident on the face of the complaint but the plaintiff also does

not plead facts that unequivocally show that the discovery rule does not apply." *Id.*; *see also Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (en banc) (a plaintiff "need not make any allegations about equitable tolling in his complaint").

As noted above, Plaintiff attempted to file his FTCA claim notice in October 2021. However, he mistakenly mailed it to the incorrect address and failed to sign it. The office that received the claim forwarded it to the appropriate office. It is clear that by November 22, 2021, the proper office was in receipt of the claim, yet returned it as unsigned. Muniz continued the pursuit of his administrative remedies with the Federal Bureau of Prisons, Northeast Regional Office, who again received his complaint on December 28, 2021. See Declaration of Jonathan Kerr, attached to Defendants' motion to dismiss, para. 3 and attachment 3. Although correspondence acknowledging his complaint is dated January 14, 2022, to date, Muniz has received no response to his claim. See Declaration of Jonathan Kerr, attached to Defendants' motion to dismiss, para. 3 and attachment 4.

Defendants argue that to the extent that Plaintiff's Complaint alleges a FTCA violation, the six month time period for filing suit has not expired. The time will expire on July 14, 2023. Generally, a plaintiff may not institute an FTCA action against the United States unless (1) the plaintiff has first "presented the claim to the appropriate Federal agency" whose employees are allegedly

responsible for the plaintiff's injury, and (2) that agency has "finally denied" the plaintiff's claim.

The purpose of the administrative exhaustion requirements is to afford federal agencies an opportunity to settle disputes before engaging in formal litigation in the federal courts. *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016), quoting *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014). *See Michels v. United States*, 31 F.3d 686, 688 (8th Cir. 1994)("In 1966, to encourage more administrative settlements, Congress amended the FTCA to require administrative claims in all cases."). *See also Adams v. United States*, 615 F.2d 284 (5th Cir.), reh'g denied, 622 F.2d 197 (5th Cir. 1980)(Congress, in enacting notice requirement of 28 USCS § 2675, sought to ease court congestion and avoid unnecessary litigation, while making it possible for government to expedite fair settlement of tort claims asserted against United States, and to provide for more fair and equitable treatment of private individuals and claimants when they deal with government or are involved in litigation with their government.)

The purpose of the FTCA claim requirement was fulfilled – by November 22, 2021, the proper office was in receipt of the plaintiff's claim, yet returned it as unsigned. If the agency intended to negotiate a settlement with Plaintiff Muniz, it had both his allegations and monetary demand at that point. To date, Plaintiff Muniz has not received a final decision on his claim. The agency has less than one

month from the return date of this motion, i.e. until July 14, 2023 to deny the claim. Dismissal of the Complaint on this procedural basis is not warranted. Thus, Defendants' motion to dismiss should be denied.

## V.   PLAINTIFF'S COMPLAINT STATES VALID CLAIMS AND DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.

Defendants bring their motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. Inc. v. Senju Pharm. Co*., 836 F.3d 261, 268 (3d Cir. 2016) (quotation omitted). "[A] factual 12(b)(1) challenge attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.* (citation omitted). But if a dispute of material fact exists, "the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 290 (3d Cir. 2006); *Berardi v. Swanson Mem'l Lodge No. 48*, 920 F.2d 198, 200 (3d Cir. 1990) (holding that district court must ensure that plaintiffs must have "an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing" (quotation omitted).

Under Rule 12(b)(6), "courts must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Kedra v. Schroeter*, 876 F.3d 424, 440-41 (3d Cir. 2017) (quotation omitted).

The Court "must consider the complaint in its entirety" and require "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 441 (quotations omitted). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Because Muniz proceeded *pro se* in the District Court, his pleadings must be construed liberally and held to "less stringent standards than formal pleadings." *Haines v. Kerne*, 404 U.S. 519, 520–21 (1972).

Plaintiff's Complaint sets forth valid and meritorious claims against Defendants de Lasalle and United States. Plaintiff, a prisoner under the control of the BOP, was refused appropriate and necessary medical care due to the deliberate

indifference of prison officials who withheld his diabetes medication, ignored his need for accommodations in the form of soft shoe and bottom bunk passes, and failed to perform appropriate wound care on at least 8 occasions, leading to the amputation of his toe.  Despite the BOP's delays in responding to his formal complaints, Plaintiff Muniz diligently pursued his administrative remedies. Plaintiff Muniz deserves the right to pursue his claims.  Defendants' motion to dismiss should be denied.

## CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss should be denied in its entirety and with prejudice.

Respectfully submitted,
HARWOOD LLOYD, LLC


By:  *Gregory J. Irwin*

_____

GREGORY J. IRWIN
*Pro Bono* Counsel for
Plaintiff, Rolando Muniz

Dated: June 6, 2023