```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

ROLANDO MUNIZ,

    Plaintiff,                    Civ. No. 22-0816 (NLH) (MJS)

  v.                             OPINION

UNITED STATES OF AMERICA,
et al.,

    Defendants.

APPEARANCES:

Gregory James Irwin, Esq.
Harwood Lloyd LLC
130 Main Street
Hackensack, NJ 07601

    *Attorneys for Plaintiff*

Philip R. Sellinger, United States Attorney
John T. Stinson, Jr., Assistant United States Attorney
Peter Vizcarrondo, Assistant United States Attorney
Office of the United States Attorney
District of New Jersey
401 Market Street, Fourth Floor
Camden, NJ 08101

    *Attorneys for Defendants*

HILLMAN, District Judge

    Plaintiff Ronaldo Muniz filed a complaint against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., and Dr. Abigail Lopez de Lasalle pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of

Narcotics, 403 U.S. 388 (1971). ECF No. 1 ("Compl."). The complaint alleged that Defendants violated the Eighth Amendment's prohibition on cruel and unusual punishment and were negligent in treating Plaintiff's diabetes, resulting in a diabetic ulcer that led to the amputation of one of his toes. Id.

Defendants now move for dismissal of the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 22. Plaintiff opposes the motion. ECF No. 29.

For the reasons herein, the Court will grant the motion. The Eighth Amendment claims will be dismissed with prejudice, and the FTCA claim will be dismissed without prejudice.

**I.   BACKGROUND**

Plaintiff has been in BOP custody since August 23, 2011. Compl. at 11. He was diagnosed with diabetes around that time. Id. ¶ 1. In 2014, Plaintiff "was fully diabetic and was on medication." Id. He received Metformin doses between 500 and 1000 mgs as necessary to keep his A1C level under control. Id. ¶ 2. He received "soft shoe" and "bottom bunk" passes from medical staff at FCI Mariana due to the ulcers on his feet. Id. ¶¶ 3-4.

Plaintiff was placed into FCI Mariana's special housing unit ("SHU") in September 2018. Id. ¶ 6. He was transferred to FCI Yazoo's SHU a few months later. Id. Plaintiff states he

2

remained in the SHU for about 10 months and was "practically starved." Id. ¶ 7. As a result, his A1C level dropped and his doctor reduced Plaintiff's Metformin dosage to 500 mgs per day. Id. Plaintiff was transferred to FCI Fairton, New Jersey, in July 2019. Id. ¶ 8.

Defendant Lopez de Lasalle, Plaintiff's doctor at Fairton, did not conduct a new blood test upon Plaintiff's arrival at Fairton. Id. ¶¶ 9-10. Instead, she relied on Plaintiff's A1C levels reported in his medical records and stopped Plaintiff's Metformin "as in her opinion Plaintiff was not Diabetic." Id. ¶ 10. Plaintiff tried to explain the A1C levels were low because he had not been eating in the SHU prior to his transfer and asked to remain on Metformin until a new blood test could be taken. Id. ¶ 11. Defendant Lopez de Lasalle "said that there was no point for BOP to spend money for something Plaintiff did not need." Id. She also discontinued Plaintiff's soft shoe and bottom bunk passes without examining Plaintiff's feet, again stating that "she will not let 'BOP pay for something Plaintiff did not need.'" Id. ¶ 14.

By November 2019, "Plaintiff's diabetes skyrocketed and his diabetic blisters on [his] feet were full of puss and were painful." Id. ¶ 16. Plaintiff submitted verbal and written complaints to medical staff. Id. ¶ 17. He was examined on November 7, 2019 by medical staff who took a culture and

3

prescribed daily wound care.  Id. ¶ 18.  "However, on at least 6 out of 10 days, medical staff refused the wound care citing staff shortages and Plaintiff was sent back to the Unit.  As a result Plaintiff's wound got worse; suppurating 24 hours a day where Plaintiff was in extreme pain."  Id.

Plaintiff requested medical attention for his wounds on November 16 and 17, 2019 but was denied care.  Id. ¶¶ 19-20.  "[O]n both of these days it was the medical who denied Plaintiff['s] . . . requests for wound care, but the [sic] medical falsely stated that Plaintiff had denied his scheduled wound care."  Id. ¶ 20.

On November 18, Plaintiff was examined by Dr. Magan, who determined that Plaintiff needed to be taken to the emergency room.  Id. ¶ 21.  Plaintiff was taken to Inspira County Hospital, where the treating physicians immediately put Plaintiff on antibiotics after Plaintiff told them he was diabetic.  Id. ¶ 22.  An MRI "revealed that Plaintiff's diabetic ulcers and infection had spread to the bone and that his toe had to be [amputated]."  Id. ¶ 23.  Plaintiff's second toe on his left foot was removed on November 21, 2019 and he was taken back to Fairton on November 22.  ECF No. 29 at 8-10.  Defendant Lopez de Lasalle restarted Plaintiff on Metformin on December 2, 2019.  Compl. ¶ 25.

4

Plaintiff sent an administrative tort claim to the BOP's Central Office in Washington, DC on October 12, 2021. Declaration of Jonathan Kerr, ECF No. 22-2 ("Kerr Dec.") ¶ 3. The Central Office forward the claim, designated Administrative Tort Claim Number TRTNER-2022-01040, to the BOP Northeast Regional Office ("Regional Office").  Id.  The Regional Office rejected the claim on November 22, 2021 because Plaintiff had not signed the tort claim.  ECF No. 22-2 at 11.  Plaintiff sent an amended tort claim on December 28, 2021.  Id. at 13.  On January 14, 2022, the Regional Office acknowledged receipt of the claim as of December 28, 2021 and informed Plaintiff that it had "<u>six months from the date of receipt</u> to review, consider, and adjudicate [his] claim."  Id. at 18 (emphasis in original).

Plaintiff submitted his complaint on February 15, 2022. Compl.  He also filed a motion for the appointment of pro bono counsel.  ECF No. 2.  The Court permitted Plaintiff's <u>Bivens</u> claim against Defendant Lopez de Lasalle and John and Jane Does to proceed.  ECF No. 4.  The Court also permitted the FTCA claim

against the United States to proceed.  Id.[1]  The Court also granted Plaintiff's motion for counsel.  Id.[2]  ECF No. 4.

Defendants now move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 22.  Plaintiff opposes the motion.  ECF No. 29.

## II. STANDARD OF REVIEW

A.   Standard for Motion to Dismiss Under Rule 12(b)(1)

A challenge to this Court's subject matter jurisdiction is determined pursuant to Federal Rule of Civil Procedure 12(b)(1).  Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).  A motion to dismiss pursuant to Rule 12(b)(1) may attack subject-matter jurisdiction facially or factually.  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  A facial attack does not dispute the facts as alleged in the complaint, id., and therefore essentially applies the same standard as Rule 12(b)(6), see Severa v. Solvay Specialty Polymers USA, LLC, 524 F. Supp. 3d 381, 389 (D.N.J. Mar. 10, 2021) (citing In re

---

[1] The Court dismissed Plaintiff's Bivens claim against the United States and BOP; the FTCA claims against the BOP, Defendant Lopez de Lasalle, and Defendants Does; and the Rehabilitation Act claim.  ECF No. 4 at 8 (citing 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii)).

[2] The Court acknowledges and appreciates the advocacy of Gregory James Irwin, Esq. of Harwood Lloyd LLC, who accepted appointment as pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1) and this Court's Plan for Appointment of Attorneys in Pro Se Civil Actions, see App. H of the Local Civil Rules of the District of New Jersey.

Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)).  A factual attack, on the other hand, challenges the allegations by which jurisdiction is asserted, permitting the Court to weigh evidence outside the pleadings and placing a burden of proof on Plaintiff to demonstrate that jurisdiction indeed exists.  See Davis, 824 F.3d at 346.

Here, Defendants have asserted a direct factual attack, arguing that Plaintiff failed to meet the jurisdictional requirements for bringing tort claims against the United States prior to filing this lawsuit.  Accordingly, the Court may consider evidence presented by Defendants that is outside the pleadings to determine whether it has jurisdiction to hear Plaintiff's claims against the United States.

B.   Standard for Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), when deciding a motion to dismiss, a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  "Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a 'short and plain statement of the claim showing that the pleader is

entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

**III. DISCUSSION**

A.  Eighth Amendment Claim

Defendant Lopez de Lasalle moves for the dismissal of the Eighth Amendment claim against her that alleges she was deliberately indifferent to Plaintiff's serious medical need. ECF No. 22.  She argues that the Bivens remedy does not extend to Plaintiff's allegations because it is a "new context."  ECF No. 22-1 at 19.  Alternatively, Defendant Lopez de Lasalle argues she is entitled to qualified immunity and that the

8

statute of limitations for Plaintiff's claim has expired.  Id. at 30-35.

"In Bivens, the Court held that it had authority to create 'a cause of action under the Fourth Amendment' against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations."  Egbert v. Boule, 596 U.S. 482, 490 (2022) (quoting Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971)).  "Over the following decade, the Court twice again fashioned new causes of action under the Constitution — first, for a former congressional staffer's Fifth Amendment sex-discrimination claim; and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment."  Id. at 490-91 (citing Davis v. Passman, 442 U.S. 228 (1979); Carlson v. Green, 446 U.S. 14 (1980)).  "In the fifty-two years since Bivens was decided, however, the Supreme Court has pulled back the reins to what appears to be a full stop and no farther."  Xi v. Haugen, 68 F.4th 824, 832 (3d Cir. 2023).

In 2017, the Supreme Court concluded "that expanding the Bivens remedy is now a 'disfavored' judicial activity."  Ziglar v. Abbasi, 582 U.S. 120, 135 (2017).  See also Hernández v. Mesa, 140 S. Ct. 735, 742 (2020) ("In both statutory and constitutional cases, our watchword is caution.").  "These three cases — Bivens, Davis, and Carlson — represent the only

9

instances in which the Court has approved of an implied damages remedy under the Constitution itself." Abbasi, 582 U.S. at 131. "Indeed, in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three Bivens cases might have been different if they were decided today." Id. at 134.

Abbasi "created a funnel through which plaintiffs alleging constitutional violations by federal officials must pass." Alexander v. Ortiz, No. 15-6981, 2018 WL 1399302, at *4 (D.N.J. Mar. 20, 2018). "First, we ask whether the case presents 'a new Bivens context' — i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." Egbert, 596 U.S. at 492 (quoting Abbasi, 582 U.S. at 139-40). "If a case does not present a new Bivens context, the inquiry ends there, and a Bivens remedy is available." Shorter v. United States, 12 F.4th 366, 372 (3d Cir. 2021). "[I]f it is a new context, we ask, second, whether there are special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." Xi, 68 F.4th at 833 (internal quotation marks omitted). The Supreme Court has "observed that these steps 'often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy'; if so, [the court]

10

may not expand Bivens to cover the claim." Id. (quoting Abbasi, 582 U.S. at 136).

1. *Plaintiff's Claim Presents a New Context*

Defendant Lopez de Lasalle argues Plaintiff's claims are meaningfully different from Carlson, the most applicable of the three Bivens remedy cases. "Although Carlson involved an Eighth Amendment claim, its allegations, which centered on an alleged deliberate indifference to plaintiff's acute asthma attack which resulted in the inmate's death, do not resemble the claims in this case." ECF No. 22-1 at 21. "In contrast to Carlson, Plaintiff here alleges that Dr. Lopez de Lasalle discontinued his diabetes medication, soft shoes, and low bunk pass, and, approximately four months later, he developed a diabetic ulcer that led to the amputation of his toe." Id. at 22. Defendant Lopez de Lasalle argues that Plaintiff's claims present a new context because they "focus on a long term and ongoing course of medical treatment of Plaintiff's chronic condition" and not "allegations of extreme deliberate indifference to an acute medical emergency . . . ." Id.

Plaintiff argues his claims do not present a new context under Bivens because "[t]he facts herein present the very same context that Carlson did: a federal inmate alleging that his Eighth Amendment rights were violated by a prison doctor who failed to render proper medical care for a chronic medical

11

condition." ECF No. 29 at 16. He further argues that Defendant Lopez de Lasalle has not presented any "reason why Carlson should be limited to acute medical emergencies" and that "no court has ever suggested that a Bivens claim is available only to an inmate who *dies* because of an official's deliberate refusal to provide life's necessities, and not to an inmate who survives mistreatment by the same officials, yet suffers only serious, irreparable harm." Id. (emphasis in original).

Plaintiff's allegations are very similar to Carlson. There, the Supreme Court recognized a Bivens cause of action where federal prison officials failed to treat Joseph Jones, Jr.'s chronic asthma which culminated in a fatal attack. Carlson v. Green, 446 U.S. 14 (1980). See also Green v. Carlson, 581 F.2d 669, 670-71 (7th Cir. 1978) (describing facts alleged in the complaint). Plaintiff alleges federal prison officials failed to provide adequate medical care for his chronic diabetic condition. Compl., passim. The plaintiff in Carlson alleged prison officials did not give Jones proper medication or other treatments that had been prescribed to him by a physician. Green, 581 F.2d at 671. Plaintiff alleges Defendant Lopez de Lasalle discontinued his Metformin and other treatments, causing the ulcer on his toe and subsequent amputation. Compl. ¶¶ 9-14. Both asthma and diabetes are chronic medical conditions that may be fatal if left untreated.

However, these similarities are not enough post-Egbert. Egbert, 596 U.S. at 501 ("[A] plaintiff cannot justify a Bivens extension based on 'parallel circumstances' with . . . Carlson unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law.").

"[T]he Supreme Court ha[s] made clear that the category of 'new contexts' is 'broad,' and this threshold test is 'easily satisfied.'" Xi v. Haugen, 68 F.4th 824, 833 (3d Cir. 2023) (quoting Hernández v. Mesa, 140 S. Ct. 735, 743 (2020); Abbasi, 582 U.S. at 139). "A context may be regarded as new if it is different in any 'meaningful way' from the three contexts where the Court has recognized a Bivens remedy, and even 'a modest extension is still an extension.'" Id. (quoting Abbasi, 582 U.S. at 139, 142). "[T]he Carlson Court extended an implied cause of action for money damages pursuant to Bivens where the alleged deliberate indifference of prison officials was most serious; it resulted in a fatality of a prisoner." Peguero v. Quay, No. 1:22-CV-00057, 2023 WL 2410882, at *10 (M.D. Pa. Mar. 8, 2023) (declining to extend Bivens remedy to claim of chronic low back pain). See also Washington v. Fed. Bureau of Prisons, No. CV 5:16-3913-BHH, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022) ("Plaintiff's Bivens claims do not involve a medical emergency, as did Carlson, but rather focus on a long term and ongoing course of medical treatment of Plaintiff's chronic, non-

13

fatal condition."). Although Plaintiff "may have been injured, the severity of his injuries have not proven to be fatal." Hurst v. Dayton, No. 22-CV-00171-DKW-RT, 2023 WL 2526460, at *5 (D. Haw. Mar. 15, 2023) (declining to extend Bivens remedy to medical conditions brought on by prison riot), appeal filed, No. 23-15523 (9th Cir. Apr. 5, 2023).

While the Court does not minimize Plaintiff's injuries, they are meaningfully different from the medical emergency faced by the inmate in Carlson that ultimately resulted in Jones' death. See Dongarra v. Smith, 27 F.4th 174, 180–81 (3d Cir. 2022) ("Carlson extended Bivens to remedy prison officers' failure to give medical assistance. But there, the prisoner died because of the officers' neglect. Put differently, the risk that the prison officer ignored (death from not treating the prisoner's chronic asthma) in fact resulted."). "This difference is significant for multiple reasons, including that administrative and injunctive relief would have a completely different application to Plaintiff's claims than to the claims in Carlson . . . ." Washington, 2022 WL 3701577, at *5. Therefore, Plaintiff's claim presents a new Bivens context, and the Court must proceed to the second step of review.

2. *Special Factors Counsel Against Extending Bivens*

Step two requires the Court to consider "whether special factors counsel hesitation in extending a Bivens remedy." Xi,

14

68 F.4th at 836 (cleaned up). "The Bivens inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action. A court faces only one question: whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" Egbert, 596 U.S. at 496 (quoting Abbasi, 582 U.S. at 136). "If there is even a single 'reason to pause before applying Bivens in a new context,' a court may not recognize a Bivens remedy." Id. at 492 (quoting Hernández, 140 S. Ct. at 743). See also Graber v. Doe II, 59 F.4th 603, 609 (3d Cir. 2023).

The Supreme Court has held that "a court may not fashion a Bivens remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" Egbert, 596 U.S. at 495 (quoting Abbasi, 582 U.S. at 137). The Supreme Court has held that the BOP's administrative remedy program satisfies this requirement. Id. at 497 (citing Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001)).[3] See also Bulger v. Hurwitz, 62 F.4th 127, 140-41 (4th Cir. 2023) (finding that BOP's administrative remedy is a sufficient "alternative remedial structure" in special factors

---

[3] Plaintiff used the administrative remedy program, and the BOP denied his requests for an investigation into his medical care. ECF No. 1-2 at 82.

15

analysis); Silva v. United States, 45 F.4th 1134, 1141 (10th Cir. 2022) (same).  It is irrelevant that monetary damages are not available through the BOP's program.  "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy."  Egbert, 596 U.S. at 498.  The Court "recognize[s] this remedial scheme might prove to be cold comfort to [Plaintiff], who seeks an adversarial process and monetary damages, but the Supreme Court has declared that the government's procedures need not be as effective as an individual damages remedy to foreclose Bivens relief."  Barry v. Anderson, et al., No. 22-3098, 2023 WL 8449246, at *4 (3d Cir. Dec. 6, 2023).

    Accordingly, the Court must dismiss Plaintiff's constitutional claims against Defendant Lopez de Lasalle as Bivens does not afford him a remedy absent Congressional action.  Because Plaintiff's Eighth Amendment claims may not proceed under Bivens, the Court will dismiss the claims against the John and Jane Doe defendants, who have not been identified or served, as well.[4]

---

[4] The Court need not address Defendant Lopez de Lasalle's qualified immunity or statute of limitations arguments since it is dismissing the Eighth Amendment claims for lack of a Bivens remedy.

B.   Federal Tort Claims Act

Defendant United States argues the Court lacks jurisdiction over Plaintiff's FTCA claims as Plaintiff did not exhaust his administrative remedies before filing suit.  ECF No. 22-1 at 35.  Plaintiff responds that "[t]he purpose of the FTCA claim requirement was fulfilled" when the BOP's Regional Office received the unsigned notice of Plaintiff's claim.  ECF No. 29 at 35.  "If the agency intended to negotiate a settlement with Plaintiff Muniz, it had both its allegations and monetary demand at that point."  Id.

"The FTCA waives sovereign immunity and grants district courts jurisdiction over tort claims against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"  Gould Elecs. Inc. v. United States, 220 F.3d 169, 179 (3d Cir. 2000) (quoting 28 U.S.C. § 1346(b)(1)) (emphasis omitted), modified on other grounds by Simon v. United States, 341 F.3d 193 (3d Cir. 2003).  This waiver of sovereign immunity is limited, however.  "Because the Federal Tort Claims Act constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed."  Livera v. First Nat'l State Bank of N.J., 879 F.2d 1186, 1194 (3d Cir. 1989).

The FTCA "provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." McNeil v. United States, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)). To exhaust his administrative remedies, a plaintiff suing under the FTCA must present the offending agency with notice of the claim, including a "sum certain" demand for monetary damages. White-Squire v. U.S. Postal Serv., 592 F.3d 453, 457 (3d Cir. 2010). Exhaustion occurs when either the agency denies the claim or six months have passed without a written denial of the claim. 28 U.S.C. § 2675(a). "This requirement is jurisdictional and cannot be waived." Shelton v. Bledsoe, 775 F.3d 554, 569 (3d Cir. 2015). The exhaustion requirement applies to all FTCA plaintiffs regardless of their pro se or incarcerated status. Id.; Wadhwa v. Nicholson, 367 F. App'x 322, 325 n.5 (3d Cir. 2010).

The BOP Regional Office received Administrative Tort Claim Number TRTNER-2022-01040 on December 28, 2021. ECF No. 22-2 at 18. The claim receipt sent to Plaintiff informed him that the Regional Office had "six months from the date of receipt to review, consider, and adjudicate [his] claim." Id. (emphasis in original). This review period would have ended June 28, 2022; however, Plaintiff filed this complaint on February 15, 2022. Compl., passim. Plaintiff did not complete the exhaustion

18

process before filing the complaint, so the Court lacks jurisdiction over Plaintiff's FTCA claim.

The fact that the six-month period expired and the exhaustion process was completed during the pendency of this lawsuit does not cure the jurisdictional error.[5]  "McNeil clarified that administrative exhaustion must be complete before instituting suit, and that this procedural rule is a requirement to which all litigants must adhere."  Wadhwa, 367 F. App'x at 325 n.5 (emphasis in original).  "[A]dministrative exhaustion must be complete before a party may institute a civil action in District Court under the FTCA."  Id. at 325 (emphasis in original).  "[T]he subsequent filing and denial of a claim after suit has been commenced does not overcome the failure to exhaust administrative remedies and premature filing of the complaint."  Priovolos v. Fed. Bureau of Investigation, 686 F. App'x 150, 152 (3d Cir. 2017).  See also McNeil, 508 U.S. at 111–12 (holding that a court is without jurisdiction to rule on a prematurely filed action even if an agency denies the related administrative claim soon after the federal lawsuit is filed); Accolla v. U.S. Gov't, 369 F. App'x 408, 410 (3d Cir. 2010) (per curiam) (holding that "because [plaintiff] filed his FTCA action in federal court before" he filed an amendment with the agency "and

---

[5] As of June 6, 2023, "Plaintiff Muniz has not received a final decision on his claim."  ECF No. 29 at 35.

before the expiration of the appropriate six month period, the District Court was without jurisdiction to rule on the FTCA claim").

The Court lacks jurisdiction over Plaintiff's FTCA claims because Plaintiff initiated this lawsuit before the FTCA exhaustion process was complete.  The Court will dismiss the FTCA claim without prejudice because the Supreme Court has held that the filing dates under the FTCA are not jurisdictional, unlike the exhaustion requirement, and are subject to equitable tolling.  United States v. Kwai Fun Wong, 575 U.S. 402, 410-12 (2015).[6]

**IV. CONCLUSION**

For the reasons set forth above, the Court will grant Defendants' motion to dismiss.

An appropriate Order follows.

Dated: December 7, 2023            s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

[6] The Court expresses no opinion as to whether Plaintiff would be entitled to equitable tolling in the event he chooses to refile his FTCA claim.